UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
THE COMMUNITY PRESERVATION
CORPORATION,
                        Plaintiff,

   -against-                                      10-cv-02061-BMC

1974 REALTY ASSOCIATES,

                        Defendant.
----------------------------------------------------------x

## RESPONSE TO ORDER TO SHOW CAUSE

       1974 Realty Associates ("Debtor") by its counsel, Backenroth Frankel & Krinsky LLP, as and for its response to the District Court's May 7, 1010 Order to Show Cause why the above-captioned matter should not be remanded based upon the Debtor's failure to file the pleadings from the removed action with the Debtor's May 6, 2010 notice of removal, respectfully represents as follows:

## SUMMARY

       Based upon Local Rule 81.1 of the Local Rules for the Southern and Eastern Districts of New York, at the time the Debtor filed its May 6, 2010 notice of removal, the Debtor fully intended to file all the records and proceedings in the removed action with the Clerk of Court within the required 20 day period for such filing, and, in fact, the Debtor is filing all such documents contemporaneously herewith, well before the May 26, 2010 local rule deadline for such filing.

**BACKGROUND**

1.      On March 18, 2010, the Debtor filed a petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101 et seq. (the "Bankruptcy Code").

2.      The Debtor is a New York limited partnership formed on or about November 19, 1987.  The Debtor's principal asset is a 47 unit apartment complex located at 1974 51st Street, Brooklyn, New York (the "Property").  Based upon the Debtor's pre-petition marketing of the Property, the Debtor believes that the value of the Property is approximately $4.95 million.  In addition, that Debtor has cash on hand of in excess of $800,000.

3.      The purchase of the Property was funded, in large measure, by two building loans from the Community Preservation Corporation ("CPC") which appear to be secured by first second mortgages, upon which the Debtor estimates that approximately $3 million is due.  The New York City Department of Housing Preservation and Development ("HPD") loaned the Debtor additional sums, which appears to be secured by a third mortgage, upon which the Debtor estimates that approximately $1 million is due.

4.      The Debtor's problems are the product of a dispute among the partners. By way of background, since its inception in 1987 until 2005, the Debtor was controlled by Jonathan Poole, as President of PR & PR Realty Corp ("PR&PR") one of the Debtor's general partners.  The relationship between the other partners and Mr. Poole deteriorated over the years,

and in January 2005, a PR&PR shareholder called a special shareholders meeting for March 16, 2005. At that meeting, over Mr. Poole's objections, James Robinson was elected as a director as president of PR&PR.

5. Mr. Poole commenced litigation challenging the election thereby putting a cloud over management's authority, and two years later the Supreme Court ordered a new shareholder meeting/election, to be held at the offices of PR&PR on December 13, 2007. At that time, Mr. Robinson was again elected as a director and as president of PR&PR.

6. By 2007, the Mortgages on the property had long since matured and in fact, CPC had commenced a foreclosure action in or about 2002. The Debtor had nonetheless established a working relationship with CPC and had been making regular payments during the foreclosure action. The Debtor believes that CPC was patiently waiting for the management dispute to end so that the Debtor could sell or refinance. And following the change of management, the Debtor did in fact enter into a purchase contract with a prospective purchaser.

7. Unfortunately, the prospect of a sale triggered a second lawsuit by Mr. Poole. As a limited partner, he has a right of first refusal. He purportedly exercised that right, but when the Debtor demanded that he close, he sought injunctive relief from the Supreme Court to essentially toll his time to close. He argues, among other things, that he has been deprived of necessary information and that there are issues regarding the distribution of the surplus sale proceeds among the partners.

8.  No doubt frustrated by yet another litigation obstacle to payment of its mortgages, in July 2009, at the urging of CPC, the Receiver took possession of the Property, but the Receiver never obtained the Supreme Court's approval to hire a managing agent. Nonetheless, a party purporting to be an approved managing agent took possession on the Receiver's behalf.  The Debtor was dissatisfied (to say the least) with the receiver's management and the costs the receivership imposed upon the Debtor.  But in a fortuitous turn of events, in late 2009, the Supreme Court dismissed the 2002 foreclosure action for insufficient service, and the receiver was compelled to turned over possession of the Property to the Debtor.

9.  In response, CPC started a new foreclosure action.  CPC also moved for an order discharging the receiver in the now-dismissed prior foreclosure action.  This, notwithstanding the fact that the receiver never filed an accounting and, let alone obtained Supreme Court approval for an accounting, and, upon information and belief, never turned over all of the funds he is holding on the Debtor's behalf.  The Debtor assumed that CPC made that motion as a prelude to seeking a receiver in the second now-pending action.

10.  Accordingly, the Debtor filed its Chapter 11 case to avoid the harm to the Property that it feared a receiver could cause.  More importantly, the Debtor learned that the Bankruptcy Code typically facilitates a sale of property free and clear of all liens, claims and encumbrances, with liens claims and encumbrances to attach to the proceeds of sale.  Thus, the Debtor intends to work with CPC and HPD to sell the Property as part of a plan of

reorganization, pay the Debtor's creditors in full in cash with interest, and then, (assuming continuing disputes among the Debtor's partners), provide for a further determination of the rights of the partners to the remaining proceeds in a separate proceeding. Towards that end, the Debtor made an application in the Bankruptcy Court to retain Massey Knackal as its real estate broker, which the Bankruptcy Court approved with no objection from any party.

11. In the meantime, the Debtor entered into a stipulation with CPC and HPD to use cash collateral solely to preserve and protect the Property.

### THE DEBTOR'S REASON FOR REMOVAL

12. As noted above, at the time the Debtor's Chapter 11 was filed, there was a motion pending that had been made by CPC in the Kings County Supreme Court in the discontinued 2002 foreclosure, to discharge the discontinued receiver without an accounting. The Debtor assumed that the motion was stayed by its Chapter 11 filing for a number of reasons.

13. First, the discontinued receiver has never filed an accounting nor, upon information and belief, has he turned over all the rental proceeds in his possession, notwithstanding the fact that his receivership terminated months before the Debtor's bankruptcy was even filed. Thus, were the receiver to be discharged, the Debtor's remedies would be limited, including recourse against his bond, if the receiver mishandled funds or made

inappropriate expenditures. This would interfere with a potential bankruptcy estate asset, and as such, would be stayed under section 362(a) of the Bankruptcy Code.

14. Second, section 543 of the Bankruptcy Code has its own rules for receivers. It requires a receiver to turnover assets to the Debtor and produce an accounting of the receivership upon the filing of a bankruptcy petition. That has not been done in this case in either the Bankruptcy Court or the Supreme Court. Indeed, no one has heard from the Receiver in response to CPC's motion. Curiously, he has not appeared to request his own discharge and approve an accounting in response to CPC's demand that the Supreme Court give him a discharge.

15. Finally, the parties' Bankruptcy Court cooperation has been seamless in terms the Debtor's plan to sell the Property in Bankruptcy Court and in terms of the Debtor's post-bankruptcy operations. The Debtor was therefore surprised to learn that CPC refused to adjourn the April 23, 2010 hearing of its motion in Kings County Supreme Court to discharge the receiver. The Debtor nonetheless assumed that the matter could be resolved by simply having the Debtor's real estate/foreclosure counsel appear and explain to the Supreme Court that the matter was stayed by the Debtor's Chapter 11 filing.

16. The Debtor was even more surprised, therefore, when its counsel appeared at the April 23, 2010 hearing and the Supreme Court effectively refused to allow the Debtor's attorney to speak. The Supreme Court was under the impression that only a "trustee" could

appear on the Debtor's behalf.  In Chapter 11, however, there is rarely a trustee appointed, and none has been appointed in this case.  Nonetheless, the Supreme Court ordered that the motion to discharge the receiver be served on the "trustee" and adjourned the matter to May 7, 2010.  Later in the day on April 23, 2010 in a telephone conference initiated by CPC with the Supreme Court Justice's law secretary and the Debtor, CPC explained that there was no "trustee" to serve.  The parties were told that the Supreme Court would not change its order absent a motion for re-argument.

17. Even after this completely unforseen turn of events, CPC still insisted on going forward with its motion in Supreme Court on May 7, 2010.

18. Rather than spend more of the Debtor's assets on State Court litigation which the Debtor believes does not serve a constructive purpose, the Debtor decided that if CPC did not agree to withdraw its motion or at least adjourn the May 7, 2010 hearing, the Debtor would remove the Supreme Court case with the hope that, ultimately, the Bankruptcy Court could preside over the receiver's accounting, turnover of funds and discharge under both section 543 of the Bankruptcy Code and New York law.

19. The Debtor held out hope until the last day that CPC would agree with the Debtor's logic, and adjourn or withdraw its motion, but on the last day the Debtor was again disappointed by CPC's refusal and the removal notice was filed on May 6, 2010.

## **RESPONSE TO THE DISTRICT COURT ORDER TO SHOW CAUSE**

20. As noted in the District Court's May 7, 2010 Order to Show Cause, the notice of removal was filed without copies of the pleadings from the removed action as required by Bankruptcy Rule 9027. Based upon Local Rule 81.1 of the Local Rules for the Southern and Eastern Districts, the Debtor intended to file all such records and proceedings within the required 20 day period for such filing. And in fact, the Debtor is filing all such documents contemporaneously herewith, well before the May 26, 2010 deadline date for such filing.

21. It bears reiterating that the action that was removed is a **discontinued** foreclosure action in which the **only** matter pending is the **terminated** Receiver's accounting, turnover of funds and discharge.

22. The Debtor would also note that the removal statute requires removal to be made to the District in which the removed action is pending. Although the Debtor's bankruptcy was filed in the Southern District of New York, the Debtor therefore removed the action to this Court because the discontinued foreclosure action is pending in Kings County. Ultimately, the Debtor intends to request that venue be transferred to the Southern District. Pursuant to a standing order in the Southern District, the case would then be automatically transferred to the Bankruptcy Court so that the issues regarding the terminated receiver could be determined in one forum with all applicable laws taken under consideration by the trier of fact.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the District Court not remand this case based upon the Debtor's failure to attach the Supreme Court pleadings to its notice of removal, and that the District Court grant such other further and different relief as may just and proper.

Dated:   New York, New York
         May 14, 2010

                                BACKENROTH FRANKEL & KRINSKY, LLP
                                Attorneys for the Debtor

                            By: s/Mark Frankel
                                Mark A. Frankel (MF-8417)
                                489 Fifth Avenue
                                New York, New York  10017
                                (212) 593-1100