## FIRST BUILDING LOAN NOTE

$ 165,000.00          New York, New York          November 24, 1987

     FOR VALUE RECEIVED, 1974 REALTY ASSOCIATES, a New York limited partnership having an address c/o Eiges & Eiges, 201 Eastern Parkway, Brooklyn, New York 11238 ("Maker") promises to pay to the order of THE COMMUNITY PRESERVATION CORPORATION, a New York not-for-profit corporation ("CPC"), having its principal place of business at 5 West 37th Street, Borough of Manhattan, City and State of New York, at its said office, or at such other place as the holder of this note may from time to time designate, in lawful money of the United States of America, the principal sum of ONE HUNDRED SIXTY FIVE THOUSAND and 00/100 ($165,000.00) DOLLARS, or so much thereof as may be advanced with interest thereon, or on the amount thereof from time to time outstanding, to be computed, as hereinafter provided, on each advance from the date of its disbursement until the said principal sum shall be fully paid and to be due and payable on the first day of the month following the initial advance and on the first day of each and every month thereafter. The said principal sum or the amount thereof outstanding, with accrued interest, shall be due and payable on May 29, 1989.

     The principal amount of this note shall bear interest at such fluctuating rate per annum as shall be in effect from time to time which is equal to two (2%) percent per annum above the base rate of interest established from time to time by the Bankers Trust Company of New York City, for responsible and substantial commercial customers. (Said rate of interest charged by Bankers Trust Company of New York City is hereinafter sometimes referred to as the "Bankers Prime Rate"). The rate of interest computed as aforesaid shall change effective as of the date of each change in said rate of interest. However, on or after November 29, 1988 said rate to be paid shall be increased to a rate not to exceed six (6%) percent per annum above the Bankers Prime Rate, such increased rate to be determined by CPC in its sole discretion. Notwithstanding the preceding sentence, it is agreed that if

     (a) prior to November 29, 1988 the Maker has completed the improvements to 1974 51st Street, Brooklyn, New York (the "premises") in accordance with the terms of a certain building loan agreement of even date herewith executed by the Maker and CPC; and

(b)   Maker has duly filed (or in the event filing is not then permitted, has prepared and submitted) all necessary documentation required (1) for tax abatement and exemption benefits under Section J51 of the New York City Administrative Code, and (2) for the application for final determination of the controlled and/or stabilized rents at the Premises to the New York State Division of Housing and Community Renewal ("DHCR") or to such other agency as is empowered by statute to determine such rents in lieu of DHCR, or (3) in the event the Indebtedness is advanced in connection with a participation loan by the Department of Housing Preservation and Development ("HPD"), pursuant to Article XV of the Private Housing Finance Law, for the application to HPD for the final determination of restructured rentals in the Premises; and

(c)   Maker is ready, willing, and able to convert to permanent financing, if applicable, pursuant to the commitment letter from CPC and HPD to Maker dated October 22, 1987;

then said interest rate shall remain at two (2%) percentage points per annum above the Bankers Prime Rate. If the Bankers Prime Rate is discontinued as a standard or becomes unascertainable, the holder hereof shall designate a comparable reference rate and the interest shall then be due and payable at the aforesaid rates of interest above such substituted reference rate.

Notwithstanding the foregoing, interest only, computed as aforesaid, shall be due and payable on the first day of December, 1987 and on the first day of each and every month thereafter until the said principal sum and all accrued interest shall be fully paid.

In the event that any payment due under this note or the mortgage securing payment hereof shall become overdue for a period in excess of fifteen (15) days, there shall be due, in addition to the other sums then due hereunder, a "late charge" of four percent (4%) of any such overdue payment.

It is not intended hereby to charge interest at a rate in excess of the maximum rate of interest permitted to be charged to the Maker under applicable law, but if, notwithstanding, interest in excess of the said maximum rate shall be paid hereunder, the excess shall be retained by the holder of this note as additional cash collateral for the payment of said principal sum, or the amount thereof outstanding.

IT IS EXPRESSLY AGREED that the said principal sum shall become due at the option of the holder of this note on the happening of any default or event by which, under the terms of

REEL 2149 PAGE 2050

mortgagor will assign and deliver the policies therefor to the mortgagee and such policies shall have endorsed thereon the standard New York mortgage clause in the name of the mortgagee. If the mortgagor fails so to insure, or so to assign and deliver the policies, the mortgagee may obtain such insurance in such amounts and all premiums paid therefor shall be repaid by the mortgagor to the mortgagee with interest thereon on demand, and in default of such repayment, at the option of the mortgagee, may be added to the indebtedness and be secured hereby. All insurance policies covering the premises, including any additional fire and other hazard insurance policies in excess of the insurance coverage required by the mortgagee, shall be collateral security for the payment of the indebtedness and the interest thereon, shall be delivered to the mortgagee and shall be endorsed so that loss thereunder shall be payable to the mortgagee as its interest may appear. Any unearned premiums thereon and right, title and interest in and to said policies are hereby assigned to the mortgagee and upon default of the mortgagor shall thereupon be the sole property of the mortgagee without offset or reimbursement. The mortgagor hereby assigns to the mortgagee all claims for loss or damage under all insurance policies at any time covering the premises. Any monies received by the mortgagee for loss under any such insurance may be retained by the mortgagee and at the option of the mortgagee be applied toward payment or reduction of the indebtedness and the interest thereon or all or part of the same may be paid to the then owner of the premises for any purpose or object satisfactory to the mortgagee. The mortgagor agrees that the application of the proceeds of any insurance covering the premises will be governed solely by this covenant and hereby waives, and agrees that no covenant, stipulation or agreement in this mortgage shall be construed pursuant to or under Section 254 sub-section 4 of the Real Property Law of New York.

4.    That no building or Equipment on the premises shall be altered, removed or demolished without the express written consent of the mortgagee except in accordance with the Building Loan Agreement and pursuant to the plans and specifications previously submitted to the mortgagee ("Permitted Alteration"). That no property or Equipment which may be subject to a security interest shall hereafter be placed in or upon the premises or buildings without the express

3

REEL 2149 PAGE 2051

written consent of the mortgagee first had and obtained.

5. That the mortgagor shall maintain the premises in reasonably good repair (and hereby empowers the mortgagee to effect such repairs and add the amounts expended to the indebtedness to be secured by this mortgage); shall comply with all requirements of Federal, State or local departments, authorities, bureaus or officials with respect thereto, shall repair or replace any buildings or Equipment on the premises damaged by fire or other hazard to the satisfaction of the mortgagee, shall not suffer or permit any waste, shall not use the premises or Equipment in any way that violates any Federal, State or local law, ordinance, rule, regulation or requirement or any restrictive covenant upon the use of the premises. The mortgagee, or its agents, shall have the right to inspect the premises from time to time at any reasonable hour of the day.

6. That the mortgagor will pay all taxes, assessments, water rates and charges, sewer rents and vault charges and in default thereof, the mortgagee may pay the same.

7. As additional collateral, the mortgagor will pay to the mortgagee, in addition to and simultaneously with the installments of principal and interest, an amount sufficient to accumulate the sum (hereinafter called "Escrow Fund"), estimated by the mortgagee to be required to pay the real estate taxes, assessments, water rents, sewer rents, vault charges and other taxes or charges on/or against the mortgaged premises and the fire and other hazard insurance premiums (all hereinafter called the "Charges") one month before the date when the same become due. The mortgagee shall apply the Escrow Fund to payment of the Charges as they become due. Any amount by which the Escrow Fund shall, at any time and from time to time, in the opinion of the mortgagee, exceed the sum required for the purpose of the Escrow Fund, shall be returned to the mortgagor or applied on any indebtedness secured by this mortgage, or credited on subsequent installments for the Escrow Fund, whichever of said alternatives the mortgagee may select. Any amount by which the Escrow Fund shall, at any time or from time to time, in the opinion of the mortgagee be deficient for the purpose of the Escrow Fund shall be paid by the mortgagor to the mortgagee within twenty (20) days

4

after written notice and demand. This paragraph shall be applicable only after conversion of the construction loan to a permanent loan.

8. In the event that any payment due under this mortgage or under the note or obligation secured hereby shall become overdue for a period in excess of fifteen (15) days, a "late charge" of four per centum (4%) of any such overdue payment, may, at the option of the mortgagee, be charged for the purpose of defraying the expense incident to handling such delinquent account.

9. That the mortgagor within ten (10) days upon request in person or within twenty (20) days upon request by mail will furnish a written statement duly acknowledged of the amount due on this mortgage and whether any offsets or defenses exist against the mortgage debt.

10. That the whole of the indebtedness and interest shall become due at the option of the mortgagee: after default in payment of any installment of principal or of interest for twenty (20) days; or after default in the payment of any tax, water rate or charge, sewer rent, vault charge or assessment for thirty (30) days after notice and demand; or after default after notice and demand either in assigning and delivering the policies insuring the buildings and Equipment or in reimbursing the mortgagee for premiums paid on such insurance, as herein provided; or after default upon request in furnishing a statement of the amount due on the mortgage and whether any offsets or defenses exist against the mortgage debt, as herein provided.

11. That the whole of the indebtedness shall become due at the option of the mortgagee:

(a) On the expiration of thirty (30) days from the passing, after the date hereof, of any Federal, State or Municipal law deducting from the value of land for the purposes of taxation any lien thereon or changing in any way the laws now in force for the taxation of mortgages or debts secured by mortgages so as to impose a tax on this mortgage or the debts secured thereby.

(b) Upon the failure of the mortgagor to furnish receipts or satisfactory proofs showing the payment of any tax, assessment, water rate or

REEL 2149 PAGE 2053

charge, sewer rent or vault charge within thirty (30) days after request therefor shall have been made.

(c)  Upon the failure of the mortgagor to maintain the buildings and Equipment thereon in reasonably good repair or to comply with the requirements of any Federal, State or local department, authority, bureau or official within three months after an order making such requirements has been issued.

(d)  Upon the failure of the mortgagor to repair or replace, within three months, any buildings or Equipment covered by the mortgage damaged by fire or other hazard unless insurance proceeds resulting therefrom have been retained by the mortgagee and applied towards payment or reduction of the indebtedness and the interest thereon.

(e)  Upon the commission of waste by the mortgagor.

(f)  Upon the use of the premises or Equipment covered by this mortgage in any way which violates any Federal, State or local law, ordinance, rule, regulation or requirement or any restrictive covenant upon the use of the premises or Equipment.

(g)  Upon the failure of the mortgagor to permit the mortgagee at any reasonable time to enter upon the premises for the purpose of inspecting the same.

(h)  Upon the actual or threatened, partial or total alteration, removal or demolition of any building erected upon said premises or Equipment, or the assignment of the whole or any part of the rents of the premises, or if the buildings on the premises are vacated or abandoned.

(i)  After any default, after notice and demand, in keeping the buildings on the premises and Equipment insured against loss by fire and other hazards as required by the mortgagee under the provisions of this mortgage, or, if after application by the mortgagee to three or more insurance companies lawfully doing business in the State in which the premises are situate and

6

REEL 2149 PAGE 2054

issuing policies of such insurance upon buildings situate in the place where the premises are situate, the companies to which such application has been made shall refuse to issue such policies.

(j)   After default for thirty (30) days after notice and demand in payment of any installment of any assessment for local improvements heretofore or hereafter laid, which is or may become payable in installments and which has affected, now affects or hereafter may affect the premises, notwithstanding that such installment be not due and payable at the time of such notice and demand.

(k)   Upon the assignment by the mortgagor for the benefit of creditors.

(l)   Upon the appointment of a receiver, liquidator or trustee of the mortgagor, or adjudication of the mortgagor to be a bankrupt or insolvent, or upon the filing of a petition of the mortgagor for bankruptcy, reorganization or arrangement under the Federal Bankruptcy Act or any similar law, state or federal, now or hereafter existing, or upon filing of an answer by the mortgagor admitting insolvency or inability to pay its debts; or upon failure of the mortgagor to obtain a vacation or stay of any involuntary petition under any such law within twenty (20) days of the filing thereof.

(m)   Upon the premises or any part thereof becoming subject to any lien held by the United States of America.

(n)   Upon the commencement of any foreclosure action or proceeding or any other action or proceeding to foreclose or collect a lien junior to this mortgage or upon the exercise of any power of sale granted or held in connection with a lien junior to the lien of this mortgage.

(o)   Upon failure of the mortgagor to keep, observe and perform any of the covenants, conditions or agreements contained in this mortgage, or in the note or obligation which this mortgage secures.

(p)   Upon the gift, assignment or transfer, whether by operation of law or otherwise, of all or any of the issued and outstanding shares of the

REEL 2149 PAGE 2055

mortgagor without the mortgagee's prior written consent, if the mortgagor is a corporation.

(q)  Upon the mortgagor voluntarily creating or otherwise permitting to be created or filed against the premises any other lien superior to the lien of this mortgage.

(r)  Immediately upon the failure of the mortgagor, or any owner of the premises, to allow or permit the holder of said mortgage or its representatives to examine, at any time upon request, full and accurate books and records showing in detail the earnings and expenses of said premises, with all supporting vouchers and data, at the premises or at that place within the same city or county in which the premises are located where said books and records may customarily be kept; or upon the failure, within ten (10) days after demand therefor at any time to furnish to the mortgagee a current rent roll and a statement showing in detail the earnings and expenses since the last such statement, verified by the affidavit of the then owner of said premises or, if the owner be a corporation by the affidavit of one of its officers, except that at the mortgagee's option, such statement and rent roll shall be certified by independent public accountants.

(s)  Upon the failure of mortgagor to keep, observe and perform any of the covenants, conditions or agreements contained in the Building Loan Agreement executed simultaneously herewith by the mortgagor and the mortgagee and to be filed in the Kings County City Register's Office, or in this agreement.

(t)  Upon the failure of the mortgagor to keep, observe and perform any of the covenants, conditions or agreements contained in the Second Building Loan Note and Second Building Loan Mortgage from mortgagor to The Community Preservation Corporation of even date herewith and to be recorded in the Kings County Register's Office simultaneously herewith in the amount of $1,475,000.00 ("CPC Second Mortgage") and in the Third Building Loan Note and Third Building Loan Mortgage from mortgagor to the City of New York acting through its Department of Housing Preservation and Development ("HPD") of even

8

REEL 2149 PAGE 2056

date herewith and to be recorded in the Kings County Register's Office simultaneously herewith in the amount of $1,069,117.00 ("HPD Mortgage").

(u)  In the event any secondary or subordinate financing or secured transaction under the Uniform Commercial Code of the State of New York other than the CPC Second Mortgage and the HPD Mortgage shall affect the mortgaged premises or any equipment used in the operation and maintenance of the premises prior to the payment of the indebtedness.

12.  That notice and demand or request may be in writing and may be served in person or by mail.

13.  That, in the event the mortgagee exercises its option to declare the whole of the indebtedness due and does any act to commence a foreclosure action or proceeding for the foreclosure of this mortgage, the whole of the indebtedness shall then and at that time be due and payable without the necessity of giving notice to the mortgagor.

14.  That the mortgagee, in any action to foreclose this mortgage shall be entitled to the appointment of a receiver without notice.

15.  That any such receiver shall be entitled to take possession of the premises from the owner, tenants and/or occupants of the whole or any part thereof and to collect and receive the rents and profits and the value of the use and occupation of the premises or any part thereof from the owner, tenants and/or occupants thereof for the benefit of the mortgagee.

16.  That the mortgagor pursuant to the provisions of Section 291-f of the Real Property Law of the State of New York shall not without mortgagee's express written consent, first had and obtained, cancel, abridge or otherwise modify tenancies, subtenancies, leases or subleases of the premises or any part thereof (except tenancies solely for the residential purposes of the owner of the leasehold estate and except any tenancy having an unexpired term at the date hereof of three years or less) and hereby assigns to the mortgagee the rents, issues and profits, now or hereafter accruing or becoming due, of the premises as further security for the payment of the indebtedness and the interest thereon, and the mortgagor grants to the mortgagee the

9

REEL 2149 PAGE 2057

right to enter upon the premises for the purpose of collecting the same and to let the premises or any part thereof and, at the mortgagee's option, to apply the rents, issues and profits, after payment of all necessary charges and expenses, on account of the indebtedness or the interest due and thereon of advances made thereunder. This assignment and grant shall continue in effect until this mortgage is paid. The mortgagee, by accepting this mortgage, hereby waives and grants to the mortgagor, the right to enter upon the premises for the purposes of collecting said rents, issues and profits until default under any of the covenants, conditions or agreements contained in this mortgage or the obligation secured hereby. The mortgagor agrees to use such rents, issues, and profits in payment of insurance premiums, taxes, assessments, sewer rents, water rates and carrying charges due and to become due against the premises and in payment of the indebtedness, interest thereon and and any advances made thereunder. The right of the mortgagor, to enter upon the premises for the purposes of collecting said rents, issues and profits may be revoked by the mortgagee upon any default, on five days' written notice. The mortgagor will not, without the written consent of the mortgagee, first had and obtained, receive or collect rent from any tenant or subtenant of the premises or any part thereof for a period of more than one month in advance and no payment of rent by any tenant or subtenant of the premises or any part thereof for a period of more than one month in advance shall discharge such tenant or subtenant unless the mortgagee has given such written consent to such payment. In the event of any default under this mortgage or the obligation secured hereby, the mortgagor will pay monthly, in advance, to the mortgagee, or to any receiver appointed to collect said rent, issues and profits, the fair and reasonable rental value for the use and occupation of the premises or of such part thereof as may be in possession of the mortgagor, and upon any default in any such payment will vacate and surrender the possession of the premises or such part thereof to the mortgagee or to such receiver, and in default thereof may be evicted by summary proceedings.

17. That there is now outstanding and in force no pledge or assignment of any of the rents, issues or profits of the premises or of any portion thereof (other than to the mortgagee and HPD as holders of the Second Mortgage and HPD Mortgage on the premises

10

REEL 2149 PAGE 2058

respectively) that the mortgagor will make no such pledge or assignment thereof so long as this mortgage remains unpaid and that no rent for the premises or any portion thereof has been paid by any tenant or subtenant for more than one month in advance.

18. That in the event the mortgagee agrees or is required to pay the fees or expenses of any receiver of the rents, issues and profits of the premises, and in the event that the mortgagee, as mortgagee-in-possession of the premises, incurs expenses in excess of the rents, issues and profits received by it, such fees or expenses of such receiver and such expenses of the mortgagee, as mortgagee-in-possession with interest from the time of payment, shall be added to the indebtedness, be secured by this mortgage and be a lien on the premises prior to any other lien attaching or accruing subsequent to or otherwise subject to the lien of this mortgage, and shall be added to the amount due to the mortgagee under any judgment of foreclosure and sale in favor of the mortgagee and be repaid to the mortgagee out of the proceeds of any foreclosure sale prior to the distribution of any surplus moneys from such sale.

19. That, notwithstanding any contrary provision of law, in case of a sale under a foreclosure hereof, the premises, or so much thereof as may then be affected by this mortgage, may, at the option of the mortgagee be sold in one parcel or in more parcels.

20. That if any action or proceeding be commenced by the mortgagee to foreclose this mortgage or to collect the indebtedness, the mortgagor agrees to pay to the mortgagee as its reasonable attorneys' fees in connection with such action or proceeding, 15% of the unpaid balance of the indebtedness (less the statutory costs and allowances, if any), which fees shall be deemed to be secured by this mortgage and may be collected in such foreclosure or other action or proceeding or may be added to the indebtedness. That upon any default by the mortgagor in compliance with, or performance of, any of the terms, covenants or conditions of this mortgage or the note or obligation secured hereby, the mortgagee may remedy such default, and all payments made by the mortgagee to remedy a default of the mortgagor (including reasonable attorneys' fees and disbursements) with interest thereon shall be paid by the mortgagor and may be added to the indebtedness. That if any action or proceeding be commenced by any person other than the

11

REEL 2149 PAGE 2059

mortgagee, to which action or proceeding the mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of the mortgage, all sums paid by the mortgagee for the expense of such litigation to prosecute or defend the right and lien created by the mortgage (including reasonable attorneys' fees and disbursements) shall be paid by the mortgagor, with interest, and may be added to the indebtedness. Any such sum or sums which are added to the indebtedness by the mortgagee, with interest, shall be a lien on the premises prior to any other lien attaching or accruing subsequent to the lien of this mortgage and shall be intended to be secured by this mortgage.

21. That the mortgagor will, in compliance with Section 13 of the Lien Law, receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

22. That the mortgagee may release any portion or portions of the premises or Equipment from the lien of this mortgage, either with or without consideration, and may release or discharge in whole or in part any other note or obligation or security or insurance or guarantee which it may at any time hold as security for the payment thereof or may extend the time of payment hereof or any part hereof or of the interest hereon and may diminish the rate of interest and may take any other bond, note or obligation as security for the payment of the money secured to be paid by this mortgage payable at such time and on such terms as the mortgagee may approve and may make any other change in the terms, covenants, conditions and provisions hereof and that as to each and every one of the acts and doings of the mortgagee herein authorized and until all sum or sums secured or to be secured hereby shall have been paid in full to the mortgagee, the mortgagor and all other parties who are or shall become personally liable for the said mortgage indebtedness shall be bound thereby and continue liable for the said mortgage indebtedness as fully and effectively as if its, his and their consent thereto has been previously obtained.

REEL 2149 PAGE 2060

23. That, if the mortgagor is a corporation, the execution and delivery of this mortgage has been duly authorized by the Board of Directors of the mortgagor, and if required by the certificate of incorporation of the mortgagor also duly consented to by the stockholders of the mortgagor entitled to vote thereon.

24. <u>Intentionally Omitted</u>.

25. Mortgagor will, at mortgagor's sole cost and expense, on demand of mortgagee duly execute and deliver to mortgagee, from time to time, such further assurances, instruments and statements as may be requested to perfect or confirm the lien of this mortgage upon the premises and on any Equipment. Further mortgagor hereby authorizes mortgagee to execute and file financing and continuation statements relating to Equipment and such statements shall be effective without the signature of the mortgagor.

26. That, in the event of a condemnation, appropriation, or taking of all or part of the mortgaged premises by a governmental body, or authority or agency thereof, at a time when this mortgage is a lien thereon, the mortgagor shall pay to the mortgagee the difference between (i) the rate of interest payable to or received by the mortgagee from such body, authority or agency on the indebtedness evidenced by the obligation thereupon secured by the award for such condemnation, appropriation or undertaking in the place and stead of this mortgage, and (ii) the rate of interest reserved and payable under the terms of the obligation hereby secured (and at a like rate as the rate so reserved until payment in full of the amount due on said obligation and collectible by and payable to the mortgagee out of such award) if greater than the rate payable by or collected from such body, authority or agency, from the date of such condemnation, appropriation or taking to the date when payment in full of the amount collectible by the mortgagee is made out of such award to the mortgagee. Mortgagor hereby assigns to the mortgagee such award together with the right to receive out of such award all sums due hereunder to the Mortgagee and authorizes such body, authority or agency to pay the sum out of such award and to adopt the mortgagee's receipt and acquittance therefor as that of the mortgagor. Mortgagor hereby further agrees that the power of such body, authority or agency to make, and of the mortgagee to receive, the

REEL 2149 PAGE 2061

payment provided hereby out of such award and to deliver receipts and acquittances therefor be binding upon mortgagor and be irrevocable and that mortgagor will execute and deliver, on demand, such other instruments and assurances, at its sole cost and expense, as the mortgagee may require to collect any payment due hereunder out of any such award.

27. Any advances or sums which are added to the indebtedness secured hereby shall bear interest at the rate provided in the note or obligation secured by this mortgage at the time of such advance or the time such sums are added to the indebtedness, and are secured by this mortgage.

28. That this mortgage may not be modified or terminated orally and no requirement hereby may be waived at any time except by a writing signed by the mortgagee and no waiver shall operate upon other than a single occasion. That the exercise by the mortgagee of any of its rights, remedies or options hereunder shall not preclude the mortgagee from thereafter exercising the same or any other rights, remedies and options which it may have under this mortgage and the note or obligation secured hereby, irrespective of any previous action or proceeding taken by the mortgagee hereunder.

29. The covenants contained in this mortgage shall run with the land and bind the mortgagor, the heirs, personal representatives, successors and assigns of the mortgagor and all subsequent owners, encumbrancers, tenants and subtenants of the premises, and shall inure to the benefit of the mortgagee, and its successors and assigns and all subsequent holders of this mortgage. The word "mortgagor" shall be construed as if read "mortgagors" whenever the sense of this mortgage so requires.

30. That all covenants hereof, other than those included in New York statutory short form of mortgage, shall be construed as affording to the mortgagee rights additional to, and not exclusive of, the rights conferred under the provisions of Section 254 of the Real Property Law of the State of New York.

31. The mortgagor shall establish with the mortgagee a separate account to be called the Building Reserve Fund ("Fund") into which the mortgagor shall deposit monthly, beginning with the first payment date upon

14

REEL 2149 PAGE 2062

the conversion of the construction loan to a permanent loan the sum of FOUR HUNDRED FOURTEEN and 00/100 ($414.00) DOLLARS. Moneys in the Fund may be drawn on and used by the mortgagee, in the mortgagee's sole discretion (whether requested by the mortgagor or at the mortgagee's initiative) and in accordance with the procedures the mortgagee may from time to time adopt, for the cost of making capital improvements and renovations to the premises which are not part of the ordinary and normal expenses of operating the premises. Moneys in the Fund shall be held by the mortgagee as additional and collateral security for the indebtedness secured by this Instrument and if the mortgagor breaches any covenant or agreement in this Instrument, including, but not limited to, the covenants to pay when due any sums secured by this Instrument, the mortgagee at the mortgagee's option may apply moneys in the Fund to cure such default and the mortgagor shall be obligated to reimburse the Fund for such amount. Moneys deposited in the Fund shall bear interest which shall accrue to the Fund and be used for the purposes set forth in this paragraph at a rate established by the mortgagee.

32. That this mortgage is made pursuant to a Building Loan Agreement between mortgagor and The Community Preservation Corporation bearing even date herewith, intended to be filed in the Office of the Clerk of the County in which the premises are located on or before the date of recording of this mortgage and this mortgage is subject to all of the provisions of such Building Loan Agreement including, without limitation, the provisions thereof entitling the mortgagee to declare the entire indebtedness secured hereby to be immediately due and payable, all of which provisions are incorporated herein with the same force and with like effect as if they were fully set forth herein at length and made a part hereof.

33. This mortgage does not cover real property principally improved or to be improved by one or more structures containing in the aggregate not more than six residential cooking facilities.

34. There is a rider to this mortgage which consists of 8 pages and is annexed hereto.

15

REEL 2149 PAGE 2063

IN WITNESS WHEREOF, this mortgage has been duly executed by the mortgagor.

WITNESSED:

1974 REALTY ASSOCIATES
By: PR & PR REALTY CORP.
General Partner

By: _____
    Jonathan Poole
    President

16

REEL 2149 PAGE 2064

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF NEW YORK   )


        On this 24th day of November, 1987, before me personally came Jonathan Poole, to me known, and who, being duly sworn, did depose and say: That he resides at 245 East 19th Street, New York, New York 10019; that he is the President of PR & PR REALTY CORP., a corporation duly organized under the laws of the State of New York, having its principal place of business at c/o Eiges & Eiges, 201 Eastern Parkway, Brooklyn, New York 11238; that said corporation is a General Partner of 1974 51st Street, a New York Limited Partnership, the firm described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to said instrument is such a corporate seal; that it was affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order, and he acknowledged to me that the said instrument was executed by said corporation for and in behalf of said partnership.

_____
            Notary Public

SAMUEL H. KLAGSBRUN
Notary Public, State of New York
No. 31-4760502
Qualified in New York County
Commission Expires May 31, 1988

17

REEL 2149 PAGE 2065

RIDER TO MORTGAGE

DATED NOVEMBER 24, 1987

MADE BY

1974 REALTY ASSOCIATES

TO

THE COMMUNITY PRESERVATION CORPORATION

34.   That within ninety (90) days of the end of the mortgagor's fiscal year, mortgagor covenants and agrees to furnish to the mortgagee a copy of the mortgagor's financial statement for the fiscal year showing in detail the earnings and expenses of the premises prepared by a certified public accountant.

35.   That in the event a default occurs hereunder on the part of the mortgagor and the indebtedness with the interest accrued thereon is thereupon declared by the mortgagee to be immediately due and payable, the indebtedness shall, after the mortgagee's acceleration of the indebtedness, bear interest at the rate payable pursuant to the note and mortgage immediately prior to the default so long as the indebtedness remains unpaid.

36.   That said mortgage is a valid lien on the premises therein described for the amount hereinabove mentioned as the indebtedness, and that there are no defenses or offsets to said note.

37.   Intentionally Omitted.

38.   Nothing contained in this mortgage shall require the mortgagor to make any payment of interest in excess of the maximum non-usurious rate payable by the mortgagor at the time of such payment. If, notwithstanding, interest in excess of the said maximum rate shall be paid hereunder, the excess shall be retained by the mortgagee as additional cash collateral for the payment of said indebtedness.

39.   If at any time hereafter the fee title to all or any part of the mortgaged premises is transferred or conveyed or if title thereto shall become vested in any other person or corporation in any manner whatsoever, whether by operation of law or otherwise, or, if any ownership interest of mortgagor is

18

REEL 2149 PAGE 2066

changed or transferred in any manner by operation of law or otherwise (other than the transfer of limited partnership interests), then the mortgagee may, at the mortgagee's option, declare the indebtedness and the interest accrued secured hereby to be immediately due and payable, the ownership of the premises being of material importance to the mortgagee. A waiver by mortgagee of the provisions of this paragraph shall operate as a waiver only for the specific occasion as to which the waiver is given by the mortgagee and the provisions of this paragraph shall otherwise continue to be fully effective and operable as to any other occasion or occasions. No waiver of the acceleration of the mortgage pursuant to this clause shall be effective without the concurrence of the State of New York Mortgage Agency ("SONYMA"), the Rehabilitation Mortgage Insurance Corporation ("REMIC"), or other insurer of the mortgage lien on the Property.

40. The mortgagee may execute and file financing and continuation statements relating to equipment at the mortgaged premises covered by this mortgage and such shall be effective without signature of the mortgagor.

41. Mortgagor shall provide for professional management of the property satisfactory to the mortgagee pursuant to a contract approved by the mortgagee. The mortgagor hereby grants to the mortgagee the right and authority to approve both the managing agent and the management contract for the premises. In the event mortgagor is unable to propose either a management agent or management contract satisfactory to the mortgagee within thirty (30) days after the mortgagor's first such proposal, mortgagee shall then have the right to appoint such agent and negotiate such contract for management of the premises. Upon notice to mortgagor of mortgagee's disapproval of the then present managing agent for any reason whatsoever, mortgagor shall replace said managing agent within thirty (30) days with a managing agent satisfactory to mortgagee. If SONYMA shall request, management agreements, leases, forms of leases, and other material agreements affecting the Property shall be subject to the prior written approval of SONYMA, so long as SONYMA insures the lien of the mortgage.

42. The mortgagor grants permission for the mortgagee or its agents to enter upon the mortgaged premises and to erect or cause to be erected, a sign to be permanently affixed (by holes drilled into the building's facade to accommodate metal studs attached to the sign or otherwise) to the exterior facade of the premises in a location satisfactory to the mortgagee during the term of this mortgage indicating that the property is a CPC - Rehabilitated Building. The mortgagor shall fully

REEL 2149 PAGE 2067

cooperate towards the erection of such sign and the maintenance of such sign at the premises.

In the event the permanent mortgage is insured by the State of New York Mortgage Agency ("SONYMA"), and if SONYMA so requests, mortgagor shall permit a sign to be securely affixed to and maintained on the exterior wall of the property in a location and manner satisfactory to SONYMA, which sign shall indicate that the financing of the construction, rehabilitation or acquisition of the property was made possible through the efforts of SONYMA. SONYMA will provide the sign, available to the mortgagor at the office of the New York State Office of General Services ("OGS") nearest to the property. Mortgagor shall be responsible, at its own cost, for transporting the sign from such OGS office to the property, for affixing the sign, maintaining it in good condition, and for providing for insurance coverage with respect to the sign.

43. Mortgagee agrees that it will not institute any separate action for a money judgment against mortgagor on this mortgage, the Building Loan Agreement, or the note secured hereby or on any covenant therein or herein contained for the payment of the indebtedness, or for any default thereunder or hereunder. Notwithstanding the foregoing, in the event mortgagee institutes a foreclosure proceeding under this mortgage, it herein specifically reserves its right to institute an action at law against mortgagor or to make claim in such foreclosure proceeding for the payment to it, or to a Receiver, if appointed in said foreclosure proceeding, of any and all security deposits received by mortgagor (and not transferred by mortgagor in connection with a conveyance of the mortgaged premises to any other person or corporation which has assumed full responsibility for such security deposits, which conveyance has been consented to by mortgagee if required pursuant to the terms and conditions of this mortgage) or in possession of mortgagor under terms existing at the time of the commencement of said foreclosure. In such an action or proceeding as described in the preceding sentence, mortgagee may seek a money judgment against the mortgagor, as well as a deficiency judgment, for such security deposits, but mortgagee may not seek a money judgment or a deficiency judgment against mortgagor for any amount in excess of the amount of such security deposits, it being agreed that, except for the aforementioned liability for such security deposits, neither mortgagor nor any officer, director, or principal thereof shall have any personal liability under this mortgage, the Building Loan Agreement, or the note secured hereby.

44. The mortgagor, upon demand of the mortgagee, shall deliver to the mortgagee a deed in lieu of foreclosure on

REEL 2149 PAGE 2068

the occurrence of a default hereunder, which default entitles mortgagee to declare the unpaid balance due and payable.

45. The mortgagor covenants and agrees with the mortgagee not to effect or permit to exist any other mortgage lien affecting the mortgaged premises during the term hereof other than the CPC Second Mortgage and HPD Mortgage exectued simultaneously herewith.

46. Policies of insurance to be provided under paragraph 3 of this mortgage and evidence of renewal of such policies shall be delivered by the mortgagor to the mortgagee at least thirty (30) days prior to the expiration of coverage with proof of premium payment therefor for at least one year.

47. That in order more fully to protect the security of this mortgage together with, and in addition to, the monthly payments of the principal and interest payable hereunder, the mortgagor will pay to the mortgagee (i) the amount of the initial application fee upon demand, and (ii) on the first day of each month until said indebtedness is fully paid an amount sufficient to provide the holder hereof with funds to pay the next mortgage insurance premium or monthly charge (in lieu of a mortgage insurance premium) one (1) month prior to its due date of the annual mortgage insurance premium to the State of New York Mortgage Agency or other insurer satisfactory to mortgagee. All payments mentioned in the Note and in paragraphs 7 and 31 of this mortgage and all payments to be made under the provisions of this paragraph 47 shall be added together and the aggregate amount thereof shall be paid by the mortgagor each month in a single payment to be applied by the mortgagee to the following items in the order set forth:

(a) the initial application fee and the premium charges under the contract of insurance with the State of New York Mortgage Agency or other insurer satisfactory to mortgagee or monthly charge (in lieu of mortgage insurance premium) as the case may be;

(b) taxes, assessments, water rates, fire and other hazard insurance premiums;

(c) interest;

(d) amortization of the indebtedness; and

(e) Building Reserve Fund.

REEL 2149 PAGE 2069

Any deficiency in the amount of any such aggregate monthly payment shall, unless made good by the mortgagor prior to the due date of the next such payment, constitute a default under this mortgage. In the event that any payment shall become overdue for a period in excess of fifteen (15) days, a "late charge" may be charged by the holder hereof for the purpose of defraying the expenses incident to handling such delinquent payment. This paragraph shall be applicable only after conversion of the construction loan to a permanent loan.

The provisions of this paragraph 47 shall otherwise be subject to the provisions of paragraphs 7 and 31 above.

48.   Intentionally Omitted.

49.   Mortgagee shall have the right at its election, but shall not be obligated to prepare and file with the Tax Commission of the City of New York or other appropriate governmental authority having jurisdiction, on mortgagee's own behalf and/or on behalf of mortgagor, an application to correct or reduce the assessed valuation of the mortgaged premises. Mortgagee shall also have the right at its election, but shall not be obligated, to commence and maintain any action or proceeding for the judicial review of the assessed valuation of the mortgaged premises. Such right may be exercised by notice given to mortgagor at any time until the entire principal indebtedness and all accrued interest thereon shall be paid by mortgagor. Upon the giving of such notice, mortgagor shall cooperate fully with mortgagee in the preparation, filing and prosecution of such application, and/or commencing and maintaining such action or proceeding, including, but not limited to, the preparation, execution, and delivery of a written power of attorney from mortgagor and any other document, record or statement reasonably requested by mortgagee and the attendance of such duly authorized agents or employees of mortgagor as mortgagee may reasonably request at any hearing, trial, or other proceeding in connection with the prosecution thereof, and mortgagor shall relinquish full control over any pending application, action or proceeding to mortgagee and shall not thereafter commence, file, or maintain any other application, action, or proceeding for the tax year referred to in mortgagee's notice.

If mortgagee shall exercise the foregoing right and shall be successful in reducing the assessed valuation of the mortgaged premises, mortgagor shall pay mortgagee its attorneys' fees and other expenses in connection therewith, in default of which the amount of such attorneys' fees and other expenses shall be added to the principal indebtedness secured by this mortgage. The failure of mortgagor to keep, observe,

REEL 2149 PAGE 2070

or perform any of the covenants contained in this section shall be deemed to be an event of default under this mortgage entitling mortgagee, at its option, to declare the principal indebtedness secured by this mortgagee all accrued interest thereon to be immediately due and payable.

50. Mortgagor shall have the right to prepay the entire principal indebtedness secured hereby without penalty on any interest date upon thirty (30) days, written notice to mortgagee.

51. Mortgagor agrees that it will not agree with any person to accept rent in an amount below the maximum permitted by law for any apartment in the mortgaged premises.

52. Until the conversion of the construction loan to a permanent loan the lien of this mortgage on the mortgaged premises shall be equal and coordinate with the lien of the CPC Second Mortgage on the mortgaged premises. The lien of the HPD Mortgage on the mortgaged premises, however, shall be subject and subordinate to the lien of this mortgage and of CPC Second Mortgage on the mortgaged premises.

53. Intentionally Omitted.

54. If default be made in the payment of any interest, installment or other amount when due, under the CPC Second Mortgage or the HPD Mortgage, the holder of this mortgage shall have the right to pay such interest, and the mortgagor on demand will repay the amount so paid with interest, and the amount, if not paid with interest thereon, may be added to the indebtedness secured hereby, and shall be a lien on the premises and be collected as part of the debt secured by this mortgage, and in the event of any such payment of interest, installment or other amounts, the whole debt secured thereby shall, at the option of the holder thereof, without notice or demand, immediately become due and payable, anything herein contained to the contrary notwithstanding.

55. Upon the Completion of the Improvement, as referred to in Section 25 of the Building Loan Agreement and the making of the final advance pursuant to the Building Loan Agreement, mortgagor shall enter with mortgagee into and record an agreement modifying and extending this mortgage in the form annexed hereto as Exhibit B in accordance with the terms and conditions of the commitment letter dated October 22, 1987, from mortgagee and HPD to mortgagor (the "Permanent Loan Conversion"). If the Permanent Loan Conversion shall not occur on or prior to May 29, 1989, the unpaid principal indebtedness,

REEL 2149 PAGE 2071

together with all accrued interest thereon, shall become due and payable on May 29, 1989.

56. Within thirty-five (35) days after November 29, 1988 borrower shall have submitted to the Department of Housing Preservation and Development ("HPD") a complete application for tax exemption and tax abatement pursuant to the so-called J-51 Program and shall have furnished CPC with a copy of same. Such application shall include all bills, cancelled checks, contracts and subcontracts, and any and all other documents required or requested by HPD. Borrower's failure to submit such application within such 35 day period shall be a material default hereunder and, upon occurrence of such default and written notice thereof by mortgagee to mortgagor, the entire principal indebtedness, with interest, shall be immediately due and payable.

57. Within 35 days after November 29, 1988, mortgagor shall have submitted to the Division of Housing and Community Renewal ("DHCR"), the Department of Housing Preservation and Development ("HPD"), or other or successor agency with jurisdiction over rental increases, a complete application for rent increases and any legal confirmation of rentals in the Property. Such application shall include all documents required or requested by such governmental agency. Borrower's failure to submit such application within such 35-day period shall be a material default hereunder and, upon occurrence of such default and written notice thereof by mortgagee to mortgagor, the entire principal indebtedness, with interest, shall be immediately due and payable.

58. **Intentionally Omitted.**

59. That the mortgagor will arrange for the mortgagee to be named as an insured party under liability insurance policies satisfactory to the mortgagee. The mortgagor will also furnish proof of machinery and boiler explosion insurance coverage in an amount not less than $100,000.00, and satisfactory to the mortgagee.

60. If SONYMA shall commit to insure this mortgage, the mortgagor shall take all actions which shall be required by SONYMA of a mortgagor in order to finalize such insurance for the mortgagee.

61. Prior to the Permanent Loan Conversion, the mortgagor shall furnish to the mortgagee a copy of the Certificate of Occupancy for the premises. If no such Certificate exists, the mortgagor shall arrange for a certification from a title company satisfactory to the

REEL 2149 PAGE 2072

mortgagee that no such Certificate is necessary for legal occupancy of the premises.

62. Mortgagor shall rent at least nineteen (19) units in the premises to lower income tenants (as defined in the Housing Development Grant Program regulations) ("Lower Income Units") from the period running from initial occupancy to twenty (20) years after 50% of the units are occupied (the "Low Income Term").

63. Mortgagor shall rent not less than five (5) of the nineteen (19) Lower Income Units to homeless families and/or individuals referred by HPD or such other referral services approved by HPD during the low Income Term. This paragraph shall be of no force and effect after five (5) years from the date of commencement of the Low Income Term. Mortgagor shall have the right to screen such referrals.

64. Mortgagor shall begin construction prior to November 29, 1987. For the purposes of this paragraph, construction means the beginning of initial site clearance and preparation, provided that these activities are pursued diligently and are followed without any delay by other construction activities. Insofar as the United States Department of Housing and Urban Development ("HUD") may require changes in certain Building Loan Documents, HPD, Lender and Borrower agree to reasonably cooperate with HUD so that HUD will approve said documents, provided such changes are satisfactory to Lender and HPD.

65. All rentals and leases for Lower Income Units shall be subject to applicable provisions of the Owner-Grantee Agreement executed simultaneously herewith between HPD and Mortgagor, including, but not limited to, the requirement that the leases contain the Housing Development Grant Program Rider set forth in said Owner-Grantee Agreement.

REEL **2149** PAGE **2073**

66. Notwithstanding any other provision of this mortgage, the Declaration of Covenants dated November 5, 1987 and recorded in Reel 2116, Page 2393 on November 6, 1987 and the Declaration of Covenants dated November 24, 1987 to be recorded shall both be permitted encumbrances against the premises.

25 - A

REEL 2149 PAGE 2074

EXHIBIT A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the Westerly side of 20th Avenue with the Southerly side of 51st Street;

RUNNING THENCE Southerly along the Westerly side of 20th Avenue, 100 feet 2 inches to the center line of the block;

THENCE Westerly and parallel with 51st Street, 118 feet 8 inches;

THENCE Northerly and parallel with 20th Avenue and part of the distance through a party wall, 100 feet 2 inches to the Southerly side of 51st Street;

THENCE Easterly along the Southerly side of 51st Street, 118 feet 8 inches to the corner, the point or place of BEGINNING:

Said premises being known as 1974 51st Street, Brooklyn, New York

REEL 2149 PAGE 2075

EXHIBIT B

MODIFICATION AND EXTENSION OF MORTGAGE AGREEMENT

AGREEMENT made this ____ day of ____, 198_, between 1974 REALTY ASSOCIATES, a New York limited partnership having an address c/o Eiges & Eiges, 201 Eastern Parkway, Brooklyn, New York 11238 ("mortgagor"); and THE COMMUNITY PRESERVATION CORPORATION (formerly The New York City Community Preservation Corporation), a private not-for-profit corporation, having its principal place of business at 5 West 37th Street, New York, New York 10018 ("mortgagee"),

W I T N E S S E T H:

WHEREAS, mortgagor is the owner in fee of the premises known as 1974 51st Street, County of Kings, City and State of New York, more fully described on Exhibit A annexed hereto and made a part hereof (the "Premises"); and

WHEREAS, mortgagee is the owner and holder of a certain mortgage (the "mortgage") and the note (the "note") accompanying the same, made and executed by mortgagor to mortgagee to secure the payment of $165,000.00 and interest, which mortgage covers the Premises, bears date November ___, 1987 and was recorded in the Kings County Register's Office in Reel ___, Page ____ on _____; 1987; and

27

REEL 2149 PAGE 2076

WHEREAS, the aggregate amount unpaid and secured by the mortgage is $165,000.00 and interest; and

WHEREAS, mortgagor and mortgagee are also parties to a Building Loan Agreement dated November ____, 1987 (the "Building Loan Agreement"), which was filed on              , 1987 in the Kings County Register's Office providing for certain improvements to be made to the Premises; and

WHEREAS, Paragraph 55 of the Rider to the mortgage provides that, upon the Completion of the Improvement, as referred to in Section 25 of the Building Loan Agreement, and the making of the final advance pursuant to the Building Loan Agreement, mortgagor shall enter with mortgagee into and record an agreement modifying and extending the mortgage in the form of this agreement in accordance with the terms and conditions of the commitment letter dated October 22, 1987 from mortgagee to mortgagor; and

WHEREAS, the Completion of the Improvement, as referred to in Section 25 of the Building Loan Agreement, has occurred and the final advance pursuant to the Building Loan Agreement has been made, and the parties desire to modify and extend the mortgage pursuant to Paragraph 55 of the Rider to the mortgage in accordance with the terms and conditions hereinafter set forth.

REEL 2149 PAGE 2077

NOW, THEREFORE, mortgagor, in consideration of the sum of one ($1.00) dollar to mortgagor in hand paid by mortgagee, and in order to induce the latter to modify and extend the time for payment of the mortgage and the note secured thereby, hereby covenants and agrees to and with mortgagee as follows:

1.    Mortgagor acknowledges and confirms that mortgagor is the sole fee owner of the mortgaged premises hereinbefore described, that the mortgage is a first lien, and that there is now due and unpaid under the mortgage the principal sum of $165,000.00 (the "principal indebtedness") together with interest and that mortgagor has no right of offset, defense or counterclaim against said sum.

2.    No payment shall be due under paragraph 31 of the mortgage for the Building Reserve Fund until _____.

3.    The note and mortgage are hereby modified and extended as follows:

(i)    The principal indebtedness shall be an adjustable rate mortgage loan, prepayable in full at any time without penalty, upon thirty (30) days prior written notice, automatically renewed on the First Adjustment Date or a subsequent Adjustment Date (as defined below) at a new rate of interest which shall be determined by mortgagee in its sole discretion and as permitted by law (a "New Rate"). Mortgagor will be notified of any New Rate at

29

REEL 2149 PAGE 2078

least thirty (30) days prior to the effective date thereof.

Term: 10 years. In no event will the mortgage be renewed for any period beyond          , 2009.

Original Interest Rate: 10.97% per annum which shall be the rate from the date hereof until the First Adjustment Date.

First Adjustment Date: For loans converting to a permanent status during the months of September through February, the First Adjustment Date shall be the fifth anniversary of the March 1 following the permanent conversion. For loans converting to permanent status during the months of March through August, the First Adjustment Date shall be the fifth anniversary of the September 1 following the permanent conversion.

Permanent conversion: The date hereof.

"Adjustment Date" shall be the fifth anniversary of the First Adjustment Date or of the most recent Adjustment Date, whichever is later.

Payments: Interest only on          , 198 ; an installment of principal and interest in the amount of $2,271.00 per month, commencing with the first day of          198  , and a like installment on the first day of every month thereafter until the First Adjustment Date, representing 16.5096% debt constant.

REEL 2149 PAGE 2079

Out of each installment of principal and interest when received by the holder hereof, first an amount sufficient to pay the interest accrued on the unpaid principal indebtedness shall be applied by the holder hereof to the payment of such interest, and second, the balance of each of said installments of principal and interest shall be applied in reduction of the unpaid principal indebtedness.

The following paragraphs of the First Building Loan Mortgage have been supplemented by the following:

11(u). Mortgagee shall have the right to declare the full amount due and payable under the mortgage in the event that mortgagor obtains any secondary or subordinate financing other than the Second Building Loan Note and Second Building Loan Mortgage and the Third Building Loan Note and the HPD Mortgage held by The New York City Department of Housing Preservation and Development] or permits any secured transaction under the Uniform Commercial Code which affects the Premises or any equipment used in the operation and maintenance of the premises prior to the payment of the mortgage loan unless expressly permitted in writing by the mortgagee and The State of New York Agency ("SONYMA").

3. Mortgagor shall maintain the following insurance policies including but not limited to comprehensive liability insurance, fire and extended

31

REEL 2149 PAGE 2080

coverage "all risk" insurance, machinery and boiler explosion insurance in an amount not less than $100,000, which policies shall:

a) provide for coverage in an amount at least equal to the unpaid principal amount of the mortgage;

b) contain an endorsement that the policy may not be cancelled unless the insurer gives the mortgagee not less than the number of days' prior written notice of such cancellation which is in accordance with the standard policy of the mortgagee with respect to similar borrowers, but such policy shall provide for not less than ten days' prior written notice; and

c) if the Premises are located in a federally designated flood area, then the mortgagor must provide coverage by flood insurance in favor of the mortgagee in an amount equal to the maximum amount available or the insurable value of the improvement, whichever is less.

The following paragraphs of the Rider to the mortgage have been supplemented by the following:

39.  Mortgagee shall have the right to declare the full amount due and payable under the mortgage in the event that mortgagor sells, transfers, assigns or conveys (voluntarily, by operation of law or otherwise) all, substantially all, or any part of the Premises, its

32

REEL 2149 PAGE 2081

interest therein or its stock or partnership interest, as the case may be (other than the transfer or limited partnership interests), without the prior and express written consent of the mortgagee and SONYMA.

52.   The mortgage shall in all respects be a prior lien to the subordinate mortgage assigned to HPD (the "subordinate mortgage").

The following paragraphs have been added to the Rider to the mortgage:

65.   Mortgagee shall have the right to cure any and all defaults of the mortgagor at the cost and expense of the mortgagor.

66.   So long as the SONYMA Mortgage Insurance Policy remains in effect, SONYMA at its discretion may request that any and all management agreements affecting the Property shall be subject to the prior written approval of SONYMA.

4.   Except as modified herein, all the terms, covenants, and conditions of the mortgage and the note secured thereby shall remain in full force and effect, including, but not limited to, all rights and remedies reserved to mortgagee in the event of any default.

IN WITNESS WHEREOF, this agreement has been duly

33

REEL 2149 PAGE 2082

executed by mortgagor and mortgagee as of the day and year first set forth above.

WITNESSED:

                                    1974 REALTY ASSOCIATES
                                    By:  PR & PR REALTY CORP.
                                       General Partner

_____           By:_____
                                          Jonathan Poole
                                            President


WITNESSED:                          THE COMMUNITY PRESERVATION
                                    CORPORATION

_____           By:_____
                                          Mariann Perseo,
                                       Corporate Secretary

# RIDER

REEL 2149 PAGE 2083

**47.**      Notwithstanding  any other provision of this  mortgage, the Declaration of Covenants dated November 5, 1987 and  recorded in  Reel 2116, Page 2393 on November 6, 1987 and the  Declaration of  Covenants dated November 24, 1987 to be recorded  shall  both be permitted encumbrances against the premises.



```
STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )
```

On the          day of                    , 198  ,
before me personally came MARIANN PERSEO to me known, who, being
by me duly sworn, did depose and say that she resides at 131 W.
28th Street, New York, New York, that she is the Corporate
Secretary of THE COMMUNITY PRESERVATION CORPORATION, the
corporation described in and which executed the above
instrument; that she knows the seal of said corporation; that
the seal affixed to said instrument is such corporate seal; that
it was so affixed by order of the Board of Directors of said
corporation, and that she signed her name thereto by like order.

                                        _____
                                           Notary Public

35

REEL 2149 PAGE 2008

(i)  After any default, after notice and demand, in keeping the buildings on the premises and Equipment insured against loss by fire and other hazards as required by the mortgagee under the provisions of this mortgage, or, if after application by the mortgagee to three or more insurance companies lawfully doing business in the State in which the premises are situate and issuing policies of such insurance upon buildings situate in the place where the premises are situate, the companies to which such application has been made shall refuse to issue such policies.

(j)  After default for thirty (30) days after notice and demand in payment of any installment of any assessment for local improvements heretofore or hereafter laid, which is or may become payable in installments and which has affected, now affects or hereafter may affect the premises, notwithstanding that such installment be not due and payable at the time of such notice and demand.

(k)  Upon the assignment by the mortgagor for the benefit of creditors.

(l)  Upon the appointment of a receiver, liquidator or trustee of the mortgagor, or adjudication of the mortgagor to be a bankrupt or insolvent, or upon the filing of a petition of the mortgagor for bankruptcy, reorganization or arrangement under the Federal Bankruptcy Act or any similar law, state or federal, now or hereafter existing, or upon filing of an answer by the mortgagor admitting insolvency or inability to pay its debts; or upon failure of the mortgagor to obtain a vacation or stay of any involuntary petition under any such law within twenty (20) days of the filing thereof.

(m)  Upon the premises or any part thereof becoming subject to any lien held by the United States of America.

(n)  Upon the commencement of any foreclosure action or proceeding or any other action or proceeding to foreclose or collect a lien junior to this mortgage or upon the exercise of any power of sale granted or held in connection with a lien junior to the lien of this mortgage.

7

REEL 2149 PAGE 2009

(o) Upon failure of the mortgagor to keep, observe and perform any of the covenants, conditions or agreements contained in this mortgage, or in the note or obligation which this mortgage secures.

(p) Upon the gift, assignment or transfer, whether by operation of law or otherwise, of all or any of the issued and outstanding shares of the mortgagor without the mortgagee's prior written consent, if the mortgagor is a corporation.

(q) Upon the mortgagor voluntarily creating or otherwise permitting to be created or filed against the premises any other lien superior to the lien of this mortgage.

(r) Immediately upon the failure of the mortgagor, or any owner of the premises, to allow or permit the holder of said mortgage or its representatives to examine, at any time upon request, full and accurate books and records showing in detail the earnings and expenses of said premises, with all supporting vouchers and data, at the premises or at that place within the same city or county in which the premises are located where said books and records may customarily be kept; or upon the failure, within ten (10) days after demand therefor at any time to furnish to the mortgagee a current rent roll and a statement showing in detail the earnings and expenses since the last such statement, verified by the affidavit of the then owner of said premises or, if the owner be a corporation by the affidavit of one of its officers, except that at the mortgagee's option, such statement and rent roll shall be certified by independent public accountants.

(s) Upon the failure of mortgagor to keep, observe and perform any of the covenants, conditions or agreements contained in the Building Loan Agreement executed simultaneously herewith by the mortgagor and the mortgagee and to be filed in the Kings County Clerk's Office, or in this agreement.

(t) Upon the failure of the mortgagor to keep, observe and perform any of the covenants, conditions or agreements contained in the First

8

Building Loan Note and the First Building Loan Mortgage from mortgagor held by The Community Preservation Corporation of even date herewith and to be recorded in the Kings County Register's Office simultaneously herewith in the amount of $165,000.00 ("CPC First Mortgage") and in the Third Building Loan Note and the Third Building Loan Mortgage from mortgagor held by HPD of even date herewith and to be recorded in the Kings County Register's Office simultaneously herewith in the amount of $1,069,117.00 ("HPD Mortgage").

(u)    In the event any secondary or subordinate financing or secured transaction under the Uniform Commercial Code of the State of New York other than the CPC First Mortgage and the HPD Mortgage shall affect the mortgaged premises or any equipment used in the operation and maintenance of the premises prior to the payment of the indebtedness.

12.    That notice and demand or request may be in writing and may be served in person or by mail.

13.    That, in the event the mortgagee exercises its option to declare the whole of the indebtedness due and does any act to commence a foreclosure action or proceeding for the foreclosure of this mortgage, the whole of the indebtedness shall then and at that time be due and payable without the necessity of giving notice to the mortgagor.

14.    That the mortgagee, in any action to foreclose this mortgage shall be entitled to the appointment of a receiver without notice.

15.    That any such receiver shall be entitled to take possession of the premises from the owner, tenants and/or occupants of the whole or any part thereof and to collect and receive the rents and profits and the value of the use and occupation of the premises or any part thereof from the owner, tenants and/or occupants thereof for the benefit of the mortgagee.

16.    That the mortgagor pursuant to the provisions of Section 291-f of the Real Property Law of the State of New York shall not without mortgagee's express written consent, first had and obtained, cancel, abridge or otherwise modify tenancies, subtenancies, leases or subleases of the premises or any part thereof (except tenancies solely for the residential purposes of the

9

REEL 2149 PAGE 2011

owner of the leasehold estate and except any tenancy having an unexpired term at the date hereof of three years or less) and hereby assigns to the mortgagee the rents, issues and profits, now or hereafter accruing or becoming due, of the premises as further security for the payment of the indebtedness and the interest thereon, and the mortgagor grants to the mortgagee the right to enter upon the premises for the purpose of collecting the same and to let the premises or any part thereof and, at the mortgagee's option, to apply the rents, issues and profits, after payment of all necessary charges and expenses, on account of the indebtedness or the interest due and thereon or advances made thereunder. This assignment and grant shall continue in effect until this mortgage is paid. The mortgagee, by accepting this mortgage, hereby waives and grants to the mortgagor, the right to enter upon the premises for the purposes of collecting said rents, issues and profits until default under any of the covenants, conditions or agreements contained in this mortgage or the obligation secured hereby. The mortgagor agrees to use such rents, issues, and profits in payment of insurance premiums, taxes, assessments, sewer rents, water rates and carrying charges due and to become due against the premises and in payment of the indebtedness, interest thereon and and any advances made thereunder. The right of the mortgagor, to enter upon the premises for the purposes of collecting said rents, issues and profits may be revoked by the mortgagee upon any default, on five days' written notice. The mortgagor will not, without the written consent of the mortgagee, first had and obtained, receive or collect rent from any tenant or subtenant of the premises or any part thereof for a period of more than one month in advance and no payment of rent by any tenant or subtenant of the premises or any part thereof for a period of more than one month in advance shall discharge such tenant or subtenant unless the mortgagee has given such written consent to such payment. In the event of any default under this mortgage or the obligation secured hereby, the mortgagor will pay monthly, in advance, to the mortgagee, or to any receiver appointed to collect said rent, issues and profits, the fair and reasonable rental value for the use and occupation of the premises or of such part thereof as may be in possession of the mortgagor, and upon any default in any such payment will vacate and surrender the possession of the premises or such part thereof to the mortgagee or to such receiver, and in default thereof may be evicted by summary proceedings.

REEL 2149 PAGE 2012

17. That there is now outstanding and in force no pledge or assignment of any of the rents, issues or profits of the premises or of any portion thereof (other than to the mortgagee and HPD as holder of the CPC First Mortgage and HPD Mortgage on the premises respectively) that the mortgagor will make no such pledge or assignment thereof so long as this mortgage remains unpaid and that no rent for the premises or any portion thereof has been paid by any tenant or subtenant for more than one month in advance.

18. That in the event the mortgagee agrees or is required to pay the fees or expenses of any receiver of the rents, issues and profits of the premises, and in the event that the mortgagee, as mortgagee-in-possession of the premises, incurs expenses in excess of the rents, issues and profits received by it, such fees or expenses of such receiver and such expenses of the mortgagee, as mortgagee-in-possession with interest from the time of payment, shall be added to the indebtedness, be secured by this mortgage and be a lien on the premises prior to any other lien attaching or accruing subsequent to or otherwise subject to the lien of this mortgage, and shall be added to the amount due to the mortgagee under any judgment of foreclosure and sale in favor of the mortgagee and be repaid to the mortgagee out of the proceeds of any foreclosure sale prior to the distribution of any surplus moneys from such sale.

19. That, notwithstanding any contrary provision of law, in case of a sale under a foreclosure hereof, the premises, or so much thereof as may then be affected by this mortgage, may, at the option of the mortgagee be sold in one parcel or in more parcels.

20. That if any action or proceeding be commenced by the mortgagee to foreclose this mortgage or to collect the indebtedness, the mortgagor agrees to pay to the mortgagee as its reasonable attorneys' fees in connection with such action or proceeding, 15% of the unpaid balance of the indebtedness (less the statutory costs and allowances, if any), which fees shall be deemed to be secured by this mortgage and may be collected in such foreclosure or other action or proceeding or may be added to the indebtedness. That upon any default by the mortgagor in compliance with, or performance of, any of the terms, covenants or

REEL 2149 PAGE 2013

conditions of this mortgage or the note or obligation secured hereby, the mortgagee may remedy such default and all payments made by the mortgagee to remedy a default of the mortgagor (including reasonable attorneys' fees and disbursements) with interest thereon shall be paid by the mortgagor and may be added to the indebtedness. That if any action or proceeding be commenced by any person other than the mortgagee, to which action or proceeding the mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of the mortgage, all sums paid by the mortgagee for the expense of such litigation to prosecute or defend the right and lien created by the mortgage (including reasonable attorneys' fees and disbursements) shall be paid by the mortgagor, with interest, and may be added to the indebtedness. Any such sum or sums which are added to the indebtedness by the mortgagee, with interest, shall be a lien on the premises prior to any other lien attaching or accruing subsequent to the lien of this mortgage and shall be intended to be secured by this mortgage.

21. That the mortgagor will, in compliance with Section 13 of the Lien Law, receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

22. That the mortgagee may release any portion or portions of the premises or Equipment from the lien of this mortgage, either with or without consideration, and may release or discharge in whole or in part any other note or obligation or security or insurance or guarantee which it may at any time hold as security for the payment thereof or may extend the time of payment hereof or any part hereof or of the interest hereon and may diminish the rate of interest and may take any other bond, note or obligation as security for the payment of the money secured to be paid by this mortgage payable at such time and on such terms as the mortgagee may approve and may make any other change in the terms, covenants, conditions and provisions hereof and that as to each and every one of

12

REEL 2140 PAGE 2017

the acts and doings of the mortgagee herein authorized and until all sum or sums secured or to be secured hereby shall have been paid in full to the mortgagee, the mortgagor and all other parties who are or shall become personally liable for the said mortgage indebtedness shall be bound thereby and continue liable for the said mortgage indebtedness as fully and effectively as if its, his and their consent thereto has been previously obtained.

23. That, if the mortgagor is a corporation, the execution and delivery of this mortgage has been duly authorized by the Board of Directors of the mortgagor, and if required by the certificate of incorporation of the mortgagor also duly consented to by the stockholders of the mortgagor entitled to vote thereon.

24. _Intentionally Omitted_.

25. Mortgagor will, at mortgagor's sole cost and expense, on demand of mortgagee duly execute and deliver to mortgagee, from time to time, such further assurances, instruments and statements as may be requested to perfect or confirm the lien of this mortgage upon the premises and on any Equipment. Further mortgagor hereby authorizes mortgagee to execute and file financing and continuation statements relating to Equipment and such statements shall be effective without the signature of the mortgagor.

26. That, in the event of a condemnation, appropriation, or taking of all or part of the mortgaged premises by a governmental body, or authority or agency thereof, at a time when this mortgage is a lien thereon, the mortgagor shall pay to the mortgagee the difference between (i) the rate of interest payable to or received by the mortgagee from such body, authority or agency on the indebtedness evidenced by the obligation thereupon secured by the award for such condemnation, appropriation or undertaking in the place and stead of this mortgage, and (ii) the rate of interest reserved and payable under the terms of the obligation hereby secured (and at a like rate as the rate so reserved until payment in full of the amount due on said obligation and collectible by and payable to the mortgagee out of such award) if greater than the rate payable by or collected from such body, authority or agency, from the date of such condemnation, appropriation or taking

13

REEL 2149 PAGE 2015

to the date when payment in full of the amount collectible by the mortgagee is made out of such award to the mortgagee. Mortgagor hereby assigns to the mortgagee such award together with the right to receive out of such award all sums due hereunder to the Mortgagee and authorizes such body, authority or agency to pay the sum out of such award and to adopt the mortgagee's receipt and acquittance therefor as that of the mortgagor. Mortgagor hereby further agrees that the power of such body, authority or agency to make, and of the mortgagee to receive, the payment provided hereby out of such award and to deliver receipts and acquittances therefor be binding upon mortgagor and be irrevocable and that mortgagor will execute and deliver, on demand, such other instruments and assurances, at its sole cost and expense, as the mortgagee may require to collect any payment due hereunder out of any such award.

27. Any advances or sums which are added to the indebtedness secured hereby shall bear interest at the rate provided in the note or obligation secured by this mortgage at the time of such advance or the time such sums are added to the indebtedness, and are secured by this mortgage.

28. That this mortgage may not be modified or terminated orally and no requirement hereby may be waived at any time except by a writing signed by the mortgagee and no waiver shall operate upon other than a single occasion. That the exercise by the mortgagee of any of its rights, remedies or options hereunder shall not preclude the mortgagee from thereafter exercising the same or any other rights, remedies and options which it may have under this mortgage and the note or obligation secured hereby, irrespective of any previous action or proceeding taken by the mortgagee hereunder.

29. The covenants contained in this mortgage shall run with the land and bind the mortgagor, the heirs, personal representatives, successors and assigns of the mortgagor and all subsequent owners, encumbrancers, tenants and subtenants of the premises, and shall inure to the benefit of the mortgagee, and its successors and assigns and all subsequent holders of this mortgage. The word "mortgagor" shall be construed as if read "mortgagors" whenever the sense of this mortgage so requires.

14

REEL 2149 PAGE 2016

30. That all covenants hereof, other than those included in New York statutory short form of mortgage, shall be construed as affording to the mortgagee rights additional to, and not exclusive of, the rights conferred under the provisions of Section 254 of the Real Property Law of the State of New York.

31. <u>Intentionally Omitted</u>.

32. That this mortgage is made pursuant to a Building Loan Agreement between mortgagor and The Community Preservation Corporation bearing even date herewith, intended to be filed in the Office of the Clerk of the County in which the premises are located on or before the date of recording of this mortgage and this mortgage is subject to all of the provisions of such Building Loan Agreement including, without limitation, the provisions thereof entitling the mortgagee to declare the entire indebtedness secured hereby to be immediately due and payable, all of which provisions are incorporated herein with the same force and with like effect as if they were fully set forth herein at length and made a part hereof.

33. There is a rider to this mortgage which consists of 8 pages and is annexed hereto.

IN WITNESS WHEREOF, this mortgage has been duly executed by the mortgagor.

WITNESSED:

1974 REALTY ASSOCIATES
By: PR & PR REALTY CORP.,
    General Partner

By: _____
    Jonathan Poole
    President

15

REEL 2149 PAGE 2017

STATE OF NEW YORK   )
                    : ss.:
COUNTY OF NEW YORK  )

On this 24 day of November, 1987, before me personally came Jonathan Poole, to me known, and who, being duly sworn, did depose and say: That he resides at 245 East 19th Street, New York, New York 10019; that he is the President of PR & PR REALTY CORP., a corporation duly organized under the laws of the State of New York, having its principal place of business at c/o Eiges & Eiges, 201 Eastern Parkway, Brooklyn, New York 11238; that said corporation is a General Partner of 1974 REALTY ASSOCIATES, a Limited Partnership, the firm described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to said instrument is such a corporate seal; that it was affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order, and he acknowledged to me that the said instrument was executed by said corporation for and in behalf of said partnership.

*Samuel H. Klagsbrun*
Notary Public

SAMUEL H. KLAGSBRUN
Notary Public, State of New York
No. 31-4760502
Qualified in New York County
Commission Expires May 31, 1988

16

REEL 2149 PAGE 2018

RIDER TO MORTGAGE

DATED November 24, 1987

MADE BY

1974 REALTY ASSOCIATES

TO

THE COMMUNITY
PRESERVATION CORPORATION

34.    That within ninety (90) days of the end of the mortgagor's fiscal year, mortgagor covenants and agrees to furnish to the mortgagee a copy of the mortgagor's financial statement for the fiscal year showing in detail the earnings and expenses of the premises prepared by a certified public accountant.

35.    That in the event a default occurs hereunder on the part of the mortgagor and the indebtedness with the interest accrued thereon is thereupon declared by the mortgagee to be immediately due and payable, the indebtedness shall, after mortgagee's acceleration of the indebtedness, bear interest at the rate payable pursuant to the note and mortgage so long as the indebtedness remains unpaid.

36.    That said mortgage is a valid lien on the premises therein described for the amount hereinabove mentioned as the indebtedness, and that there are no defenses or offsets to said note.

37.    Intentionally Omitted.

38.    Nothing contained in this mortgage shall require the mortgagor to make any payment of interest in excess of the maximum non-usurious rate payable by the mortgagor at the time of such payment. If, notwithstanding, interest in excess of the said maximum rate shall be paid hereunder, the excess shall be retained by the mortgagee as additional cash collateral for the payment of said indebtedness.

39.    If at any time hereafter the fee title to all or any part of the mortgaged premises is transferred or conveyed or if title thereto shall become vested in any other person or corporation in any manner whatsoever, whether by operation of law or otherwise, or, if any ownership interest of mortgagor is

17

REEL 2149 PAGE 2019

changed or transferred in any manner by operation of law or
otherwise, then the mortgagee may, at the mortgagee's option,
declare the indebtedness and the interest accrued secured
hereby to be immediately due and payable, the ownership of the
premises being of material importance to the mortgagee. A
waiver by mortgagee of the provisions of this paragraph shall
operate as a waiver only for the specific occasion as to which
the waiver is given by the mortgagee and the provisions of this
paragraph shall otherwise continue to be fully effective and
operable as to any other occasion or occasions. No waiver of
the acceleration of the mortgage pursuant to this clause shall
be effective without the concurrence of the State of New York
Mortgage Agency ("SONYMA"), the Rehabilitation Mortgage
Insurance Corporation ("REMIC"), or other insurer of the
mortgage lien on the Property.

40. The mortgagee may execute and file financing and
continuation statements relating to equipment at the mortgaged
premises covered by this mortgage and such shall be effective
without signature of the mortgagor.

41. Mortgagor shall provide for professional
management of the property satisfactory to the mortgagee
pursuant to a contract approved by the mortgagee. The
mortgagor hereby grants to the mortgagee the right and
authority to approve both the managing agent and the management
contract for the premises. In the event mortgagor is unable to
propose either a management agent or management contract
satisfactory to the mortgagee within thirty (30) days after the
mortgagor's first such proposal, mortgagee shall then have the
right to appoint such agent and negotiate such contract for
management of the premises. Upon notice to mortgagor of
mortgagee's disapproval of the then present managing agent for
any reason whatsoever, mortgagor shall replace said managing
agent within thirty (30) days with a managing agent
satisfactory to mortgagee. If SONYMA shall request, management
agreements, leases, forms of leases, and other material
agreements affecting the Property shall be subject to the prior
written approval of SONYMA, so long as SONYMA insures the lien
of the mortgage.

42. The mortgagor grants permission for the mortgagee
or its agents to enter upon the mortgaged premises and to erect
or cause to be erected, a sign to be permanently affixed (by
holes drilled into the building's facade to accommodate metal
studs attached to the sign or otherwise) to the exterior facade
of the premises in a location satisfactory to the mortgagee
during the term of this mortgage indicating that the property

REEL 2149 PAGE 2020

is a CPC – Rehabilitated Building. The mortgagor shall fully cooperate towards the erection of such sign and the maintenance of such sign at the premises.

43. Mortgagee agrees that it will not institute any separate action for a money judgment against mortgagor on this mortgage, the Building Loan Agreement, or the note secured hereby or on any covenant therein or herein contained for the payment of the indebtedness, or for any default thereunder or hereunder. Notwithstanding the foregoing, in the event mortgagee institutes a foreclosure proceeding under this mortgage, it herein specifically reserves its right to institute an action at law against mortgagor or to make claim in such foreclosure proceeding for the payment to it, or to a Receiver, if appointed in said foreclosure proceeding, of any and all security deposits received by mortgagor (and not transferred by mortgagor in connection with a conveyance of the mortgaged premises to any other person or corporation which has assumed full responsibility for such security deposits, which conveyance has been consented to by mortgagee if required pursuant to the terms and conditions of this mortgage) or in possession of mortgagor under terms existing at the time of the commencement of said foreclosure. In such an action or proceeding as described in the preceding sentence, mortgagee may seek a money judgment against the mortgagor, as well as a deficiency judgment, for such security deposits, but mortgagee may not seek a money judgment or a deficiency judgment against mortgagor for any amount in excess of the amount of such security deposits, it being agreed that, except for the aforementioned liability for such security deposits, neither mortgagor nor any officer, director, or principal thereof shall have any personal liability under this mortgage, the Building Loan Agreement, or the note secured hereby.

44. The mortgagor, upon demand of the mortgagee, shall deliver to the mortgagee a deed in lieu of foreclosure on the occurrence of a default hereunder, which default entitles mortgagee to declare the unpaid balance due and payable.

45. The mortgagor covenants and agrees with the mortgagee not to effect or permit to exist any other mortgage lien affecting the mortgaged premises during the term hereof other than the CPC First Mortgage and the HPD Mortgage from mortgagor to mortgagee and HPD respectively executed simultaneously herewith.

46. Policies of insurance to be provided under paragraph 3 of this mortgage and evidence of renewal of such policies shall be delivered by the mortgagor to the mortgagee

19

REEL 2149 PAGE 2021

at least thirty (30) days prior to the expiration of coverage with proof of premium payment therefor for at least one year.

47. That in order more fully to protect the security of this mortgage together with, and in addition to, the monthly payments of the principal and interest payable hereunder, the mortgagor will pay to the mortgagee (i) the amount of the initial application fee upon demand, and (ii) on the first day of each month until said indebtedness is fully paid an amount sufficient to provide the holder hereof with funds to pay the next mortgage insurance premium or monthly charge (in lieu of a mortgage insurance premium) one (1) month prior to its due date of the annual mortgage insurance premium to the State of New York Mortgage Agency or other insurer satisfactory to mortgagee. All payments mentioned in the Note and in paragraph 7 of this mortgage and all payments to be made under the provisions of this paragraph 47 shall be added together and the aggregate amount thereof shall be paid by the mortgagor each month in a single payment to be applied by the mortgagee to the following items in the order set forth:

(a) the initial application fee and the premium charges under the contract of insurance with the State of New York Mortgage Agency or other insurer satisfactory to mortgagee or monthly charge (in lieu of mortgage insurance premium) as the case may be;

(b) taxes, assessments, water rates, fire and other hazard insurance premiums;

(c) interest; and

(d) amortization of the indebtedness.

Any deficiency in the amount of any such aggregate monthly payment shall, unless made good by the mortgagor prior to the due date of the next such payment, constitute a default under this mortgage. In the event that any payment shall become overdue for a period in excess of fifteen (15) days, a "late charge" may be charged by the holder hereof for the purpose of defraying the expenses incident to handling such delinquent payment. This paragraph shall be applicable only after conversion of the construction loan to a permanent loan.

The provisions of this paragraph 47 shall otherwise be subject to the provisions of paragraph 7 above.

20

REEL 2143 PAGE 2022

48.  Intentionally Omitted.

49.  Mortgagee shall have the right at its election, but shall not be obligated to prepare and file with the Tax Commission of the City of New York or other appropriate governmental authority having jurisdiction, on mortgagee's own behalf and/or on behalf of mortgagor, an application to correct or reduce the assessed valuation of the mortgaged premises. Mortgagee shall also have the right at its election, but shall not be obligated, to commence and maintain any action or proceeding for the judicial review of the assessed valuation of the mortgaged premises. Such right may be exercised by notice given to mortgagor at any time until the entire principal indebtedness and all accrued interest thereon shall be paid by mortgagor. Upon the giving of such notice, mortgagor shall cooperate fully with mortgagee in the preparation, filing and prosecution of such application, and/or commencing and maintaining such action or proceeding, including, but not limited to, the preparation, execution, and delivery of a written power of attorney from mortgagor and any other document, record or statement reasonably requested by mortgagee and the attendance of such duly authorized agents or employees of mortgagor as mortgagee may reasonably request at any hearing, trial, or other proceeding in connection with the prosecution thereof, and mortgagor shall relinquish full control over any pending application, action or proceeding to mortgagee and shall not thereafter commence, file, or maintain any other application, action, or proceeding for the tax year referred to in mortgagee's notice.

If mortgagee shall exercise the foregoing right and shall be successful in reducing the assessed valuation of the mortgaged premises, mortgagor shall pay mortgagee its attorneys' fees and other expenses in connection therewith, in default of which the amount of such attorneys' fees and other expenses shall be added to the principal indebtedness secured by this mortgage. The failure of mortgagor to keep, observe, or perform any of the covenants contained in this section shall be deemed to be an event of default under this mortgage entitling mortgagee, at its option, to declare the principal indebtedness secured by this mortgagee all accrued interest thereon to be immediately due and payable.

50.  Beginning with the fifth anniversary year ("anniversary year") following the date upon which the Permanent Loan Conversion, as defined in the commitment letter from CPC and HPD to Mortgagor dated October 22, 1987, occurs, Mortgagor shall have the right to prepay the entire principal indebtedness secured hereby on any interest date upon thirty (30) days written notice to Mortgagee, and upon payment of all interest accrued thereon.

REEL 2149 PAGE 2023

51. Mortgagor agrees that it will not agree with any person to accept rent in an amount below the maximum permitted by law for any apartment in the mortgaged premises.

52. Until the conversion of the construction loan to a permanent loan the lien of this mortgage on the mortgaged premises shall be equal and coordinate with the lien of the CPC First Mortgage on the mortgaged premises. The lien of the HPD Mortgage on the mortgaged premises, however, shall be subject and subordinate to the lien of this mortgage and of CPC First Mortgage on the mortgaged premises.

53. <u>Intentionally Omitted.</u>

54. <u>Intentionally Omitted.</u>

55. If default be made in the payment of any interest, installment or other amount when due, under the CPC First Mortgage or the HPD Mortgage, the holder of this mortgage shall have the right to pay such interest, and the mortgagor on demand will repay the amount so paid with interest, and the amount, if not paid with interest thereon, may be added to the indebtedness secured hereby, and shall be a lien on the premises and be collected as part of the debt secured by this mortgage, and in the event of any such payment of interest, installment or other amounts, the whole debt secured thereby shall, at the option of the holder thereof, without notice or demand, immediately become due and payable, anything herein contained to the contrary notwithstanding.

56. Upon the Completion of the Improvement, as referred to in Section 25 of the Building Loan Agreement and the making of the final advance pursuant to the Building Loan Agreement, mortgagor shall enter with mortgage into and record an agreement modifying and extending this mortgage in the form annexed hereto as Exhibit B in accordance with the terms and conditions of the commitment letter dated October 22, 1987, from mortgagee and HPD to mortgagor (the "Permanent Loan Conversion"). If the Permanent Loan Conversion shall not occur on or prior to May 29, 1989, the unpaid principal indebtedness, together with all accrued interest thereon, shall become due and payable on May 29, 1989.

57. Any amounts paid by the mortgagor on account of any amounts due under this mortgage after the date that CPC declares the unpaid principal indebtedness to be due under the CPC First Mortgage shall belong to, be the property of and be forthwith paid and delivered to CPC to be applied by CPC to any amounts due under the CPC First Mortgage. If there is any balance remaining after such application by CPC, then CPC shall pay such balance to the mortgagee hereunder. It is understood and agreed that the provisions of this paragraph shall be

22

REEL 2149 PAGE 2024

applicable notwithstanding (1) the designation of any amount paid by the mortgagor for application to this mortgage, (2) the fact that an amount is received by the mortgagee hereunder or the servicing agent for this mortgage or (3) the fact that this mortgage was in default prior to the date that CPC declared the principal indebtedness due on the CPC First Mortgage and payments made by the mortgagor are designated or intended by the mortgagor to pay amounts due under this mortgage.

It is the intention of this Section that amounts received by the mortgagee or the servicing agent for this mortgage after CPC declares the unpaid principal indebtedness on the CPC First Mortgage to be due and payable be held by the mortgagee and/or its servicing agent as a trust fund for application as provided herein.

58. Within thirty-five (35) days after November 29, 1988, borrower shall have submitted to the Department of Housing Preservation and Development ("HPD") a complete application for tax exemption and tax abatement pursuant to the so-called J-51 Program and shall have furnished CPC with a copy of same. Such application shall include all bills, cancelled checks, contracts and subcontracts, and any and all other documents required or requested by HPD. Borrower's failure to submit such application within such 35 day period shall be a material default hereunder and, upon occurrence of such default and written notice thereof by mortgagee to mortgagor, the entire principal indebtedness, with interest, shall be immediately due and payable.

59. Within thirty-five (35) days after November 29, 1988, mortgagor shall have submitted to the Division of Housing and Community Renewal ("DHCR"); HPD, or other or successor agency with jurisdiction over rental increases, a complete application for rent increases and any legal confirmation of rentals in the Property. Such application shall include all documents required or requested by such governmental agency. Borrower's failure to submit such application within such 35 day period shall be a material default hereunder and, upon occurrence of such default and written notice thereof by mortgagee to mortgagor, the entire principal indebtedness, with interest, shall be immediately due and payable.

60. Intentionally Omitted.

61. That the mortgagor will arrange for the mortgagee to be named as an insured party under liability insurance policies satisfactory to the mortgagee. The mortgagor will also furnish proof of machinery and boiler explosion insurance coverage in an amount not less than $100,000.00, and satisfactory to the mortgagee.

23

REEL 2149 PAGE 2025

62. If SONYMA shall commit to insure the CPC First Mortgage, the mortgagor shall take all actions which shall be required by SONYMA of a mortgagor in order to finalize such insurance for the mortgagee.

63. Prior to the Permanent Loan Conversion, the mortgagor shall furnish to the mortgagee a copy of the Certificate of Occupancy for the premises. If no such Certificate exists, the mortgagor shall arrange for a certification from a title company satisfactory to the mortgagee that no such Certificate is necessary for legal occupancy of the premises.

64. Mortgagor shall rent at least nineteen (19) units in the premises to lower income tenants (as defined in the Housing Development Grant Program regulations) ("Lower Income Units") from the period running from initial occupancy to twenty (20) years after 50% of the units are occupied (the "Low Income Term").

65. Mortgagor shall rent not less than five (5) of the nineteen (19) Lower Income Units to homeless families and/or individuals referred by HPD or such other referral services approved by HPD during the Low Income Term. This paragraph shall be of no force and effect after five (5) years from the date of commencement of the Low Income Term. Mortgagor shall have the right to screen such referrals.

66. Mortgagor shall begin construction prior to November 29, 1987. For the purposes of this paragraph, construction means the beginning of initial site clearance and preparation, provided that these activities are pursued diligently and are followed without any delay by other construction activities. Insofar as the United States Department of Housing and Urban Development ("HUD") may require changes in certain Building Loan Documents, HPD, Lender and Borrower agree to reasonably cooperate with HUD so that HUD will approve said documents, provided such changes are satisfactory to Lender and HPD.

67. All rentals and leases for Lower Income Units shall be subject to applicable provisions of the Owner-Grantee Agreement executed simultaneously herewith between HPD and

REEL 2149 PAGE 2026

Mortgagor, including, but not limited to, the requirement that the leases contain the Housing Development Grant Program Rider set forth in said Owner-Grantee Agreement.

REEL 2149 PAGE 2027

68. Notwithstanding any other provision of this mortgage, the Declaration of Covenants dated November 5, 1987 and recorded in Reel 2116, Page 2393 on November 6, 1987 and the Declaration of Covenants dated November 24, 1987 to be recorded shall both be permitted encumbrances against the premises.

25A

REEL 2149 PAGE 2028

EXHIBIT A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the Westerly side of 20th Avenue with the Southerly side of 51st Street;

RUNNING THENCE Southerly along the Westerly side of 20th Avenue, 100 feet 2 inches to the center line of the block;

THENCE Westerly and parallel with 51st Street, 118 feet 8 inches;

THENCE Northerly and parallel with 20th Avenue and part of the distance through a party wall, 100 feet 2 inches to the Southerly side of 51st Street;

THENCE Easterly along the Southerly side of 51st Street, 118 feet 8 inches to the corner, the point or place of BEGINNING;

Said premises being known as 1974 51st Street, Brooklyn, New York

STATE OF NEW YORK )
                    : ss.:
COUNTY OF NEW YORK )

On this       day of November, 1987, before me personally came Jonathan Poole, to me known, and who, being duly sworn, did depose and say: That he resides at 245 East 19th Street, New York, New York 10019; that he is the President of PR & PR REALTY CORP., a corporation duly organized under the laws of the State of New York, having its principal place of business at c/o Eiges & Eiges, 201 Eastern Parkway, Brooklyn, New York 11238; that said corporation is a General Partner of 1974 51st Street, a New York Limited Partnership, the firm described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to said instrument is such a corporate seal; that it was affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order, and he acknowledged to me that the said instrument was executed by said corporation for and in behalf of said partnership.

_____
                    Notary Public

36

**Exhibit C**

the mortgage given to secure this note, or under the provisions of any agreement extending and/or modifying the mortgage, as the same may be consolidated, or under the terms of the said building loan agreement executed this date pursuant to which this note has been issued, said principal sum may or shall become due and payable; also that all of the covenants, conditions of the said building loan agreement this date are hereby made part of this instrument.

Maker and all endorsers, sureties and guarantors hereby jointly and severally waive presentation for payment, demand for payment, notice of non-payment, protest, notice of protest, diligence in collecting, notice of dishonor; and without further notice, hereby consent to renewals, extensions or partial payments either before or after maturity, reduction in the rate of interest on any money owing by it at any time on the note and whether involving the present or any future holder of this note.

This note is secured by a mortgage (the "mortgage") validly made, executed and delivered simultaneously herewith upon real property in the County of Kings, City and State of New York, known as and by the street number 1974 51st Street, Brooklyn, New York, identified as Tax Lot No. 35, Block 5469 of the Tax Map of the City of New York and is issued under the said building loan agreement between the Maker and CPC of even date relating to the rehabilitation of the improvements on such property.

This note may not be modified or terminated orally. No requirements hereby may be waived at any time except by a writing signed by the holder and no waiver shall be operative upon other than a single occasion. In any action or proceeding based on or arising out of the indebtedness evidenced by this note, or against any or all of the security for this note, no defense of adequacy of security or that resort must first be had to any particular security or remedy or to any other person shall be asserted. All rights and remedies hereby specified are intended to be cumulative and not in substitution for any right or remedy otherwise available. The terms "Maker" and "CPC" whenever used herein include the respective successors and assigns of the original parties.

This note is made and delivered in the Borough of Manhattan, County, City and State of New York, where all advances and repayments shall be made. Maker agrees that this note shall be construed in accordance with and governed by the laws of said State.

3

CPC agrees that it will not institute any separate action for a money judgment against Maker on the mortgage, the building loan agreement, or this note, or on any covenant therein or herein contained for the payment of the indebtedness, or for any default thereunder or hereunder. Notwithstanding the foregoing, in the event CPC institutes a foreclosure proceeding under the mortgage, it herein specifically reserves its right to institute an action at law against Maker or to make claim in such foreclosure proceeding for the payment to it, or to a Receiver, if appointed in said foreclosure proceeding, of any and all security deposits received by Maker (and not transferred by Maker in connection with a conveyance of the mortgaged premises to any other person or corporation which has assumed full responsibility for such security deposits, which conveyance has been consented to by CPC if required pursuant to the terms and conditions of the mortgage) or in possession of Maker under terms existing at the time of the commencement of said foreclosure. In such an action or proceeding as described in the preceding sentence, CPC may seek a money judgment against the Maker, as well as a deficiency judgment, for such security deposits, but CPC may not seek a money judgment or a deficiency judgment against Maker for any amount in excess of the amount of such security deposits, it being agreed that, except for the aforementioned liability for such security deposits, neither Maker nor any officer, director, or principal thereof shall have any personal liability under the mortgage, the building loan agreement, or this note.

IN WITNESS WHEREOF, the said Maker has caused these presents to be duly executed and sealed the day and year first above written.

WITNESSED:

_Samuel H. R. Cogd____

1974 REALTY ASSOCIATES
  a New York limited partnership

By: PR & PR REALTY CORP.
  General Partner

By: _Jonathan Poole____
    Jonathan Poole
    President

4

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

On this 24 day of November, 1987, before me
personally came Jonathan Poole, to me known, and who, being
duly sworn, did depose and say: That he resides at 245 East
19th Street, New York, New York 10019; that he is the President
of PR & PR REALTY CORP., a corporation duly organized under the
laws of the State of New York, having its principal place of
business at 475 Tuckahoe Road, Yonkers, New York; that said
corporation is a General Partner of 1974 REALTY ASSOCIATES, a
New York Limited Partnership, the firm described in and which
executed the foregoing instrument; that he knows the seal of
the said corporation; that the seal affixed to said instrument
is such a corporate seal; that it was affixed by order of the
Board of Directors of said corporation, and that he signed his
name thereto by like order, and he acknowledged to me that the
said instrument was executed by said corporation for and in
behalf of said partnership.

_Samuel H. Klagsbrun_
Notary Public

SAMUEL H. KLAGSBRUN
Notary Public, State of New York
No. 31-4760502
Qualified in New York County
Commission Expires May 31, 1988

5

#388

REEL 2149 PAGE 2048

#388

## FIRST BUILDING LOAN MORTGAGE

THIS MORTGAGE, made the 24th day of November, nineteen hundred and eighty-seven between 1974 REALTY ASSOCIATES, a New York limited partnership having an address c/o Eiges & Eiges, 201 Eastern Parkway, Brooklyn, New York 11238 (hereinafter designated as "mortgagor") and THE COMMUNITY PRESERVATION CORPORATION (formerly, THE NEW YORK CITY COMMUNITY PRESERVATION CORPORATION), a corporation duly organized and existing under the laws of the State of New York with its principal office at 5 West 37th Street, New York, New York 10018 (hereinafter designated as "mortgagee").

WITNESSETH, that to secure the payment of an indebtedness in the sum of ONE HUNDRED SIXTY-FIVE THOUSAND AND 00/100 DOLLARS ($165,000.00) lawful money of the United States, to be paid, with interest thereon according to a certain note or obligation bearing even date herewith, the mortgagor hereby mortgages to the mortgagee the following premises (the "premises"): 1974 51st Street, County of Kings, City and State of New York, more fully described on Exhibit "A" annexed hereto and made a part hereof.

TOGETHER with all the right, title and interest, if any, of the mortgagor of, in and to strips and gores of land or land under water adjacent to or adjoining the premises, and to the land lying in the bed of any street, road, avenue, lane or right of way as they now exist or formerly existed, included in, in front of, or adjoining the premises.

TOGETHER with the easements, riparian rights and appurtenances, and all the estate and rights of the mortgagor in and to the premises.

TOGETHER with all buildings, structures and improvements (hereinafter referred to as "buildings") now or hereafter erected or constructed upon the premises.

TOGETHER with all attachments, appliances, fittings, furnishings, fixtures and articles of personal property, and each and every improvement (including but not limited to all gas and electric ranges, refrigerators, gas and oil burners, automatic stokers, and all sprinkler, plumbing, heating, air-conditioning, electric power or lighting, incinerating, vacuum cleaning, ventilating and cooling systems, with their and each of their respective appurtenant furnaces, boilers, engines, motors, dynamos, radiators, pipes, wiring, and other apparatus, and all lighting fixtures, doors, ice-boxes, cupboards, cabinets, partitions, mantels, elevators, electric motors, pumps, shades, storm sashes, screens, shutters and awnings), and all additions thereto and replacements thereof,

REEL 2149 PAGE 2049

now in or upon or which shall hereafter be placed in or upon the premises, adapted to and/or necessary for the proper use and enjoyment of the same (the "Equipment") all of which are hereby represented and declared by the mortgagor to be the sole and unconditional property of the mortgagor and to be part of the freehold and covered by this mortgagee, and subject to the same laws and interest of mortgagor in and to any security agreement hereafter and limitations applicable to real property; and also all right, title and interest of mortgagor in and to any security agreement hereafter consented to in writing by mortgagee covering any Equipment as well as in the Equipment subject thereto.

TOGETHER with any and all awards and interest thereon heretofore made and hereafter to be made by any Municipal, State, Federal or other authority or corporation to any owner of the premises including any awards for any changes of grade of streets affecting the premises, or for the taking of any incorporeal rights or easements appurtenant to the premises, which awards and interest thereon and the right to receive same are hereby assigned to the mortgagee; and the mortgagee is hereby authorized and empowered to collect and receive the proceeds of any such awards and interest from the authorities making the same and to give proper receipts and acquittances therefor, and to apply the same to payment on account of the indebtedness and interest thereon hereby secured, notwith-standing that said indebtedness and interest may not be then due and payable; and the mortgagor hereby covenants, upon request by the mortgagee, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award and interest thereon to the mortgagee, free, clear and discharged of any and all encumbrances.

AND the mortgagor covenants with the mortgagee as follows:

1.   That the mortgagor will pay the indebtedness as hereinbefore provided.

2.   That the mortgagor warrants the title to the premises and Equipment.

3.   That the mortgagor will keep the buildings and Equipment insured against loss by fire and against loss by such hazard other than fire as the mortgagee may designate for the benefit of, in the amount required by, but in any event in an amount sufficient to prevent the application of any co-insurance clause, and in companies approved by the mortgagee. The

2

#388

#388

1974 REALTY ASSOCIATES

to

THE COMMUNITY PRESERVATION CORPORATION

SECOND BUILDING LOAN NOTE

Principal Amount:        $1,475,000.00

Dated:                   November 24, 1987

Premises:                1974 51st Street
                         Brooklyn, New York

Block:       5460

Lot:         35

## SECOND BUILDING LOAN NOTE

$1,475,000.00          New York, New York    November 24, 1987

FOR VALUE RECEIVED, 1974 REALTY ASSOCIATES, a New York limited partnership having an address c/o Eiges & Eiges, 201 Eastern Parkway, Brooklyn, New York 11238 ("Maker") promises to pay to the order of THE COMMUNITY PRESERVATION CORPORATION, a New York not-for-profit corporation ("CPC"), having its principal place of business at 5 West 37th Street, Borough of Manhattan, City and State of New York, at its said office, or at such other place as the holder of this note may from time to time designate, in lawful money of the United States of America, the principal sum of ONE MILLION FOUR HUNDRED SEVENTY FIVE THOUSAND and 00/100 ($1,475,000.00) DOLLARS, or so much thereof as may be advanced with interest thereon, or on the amount thereof from time to time outstanding, to be computed, as hereinafter provided, on each advance from the date of its disbursement until the said principal sum shall be fully paid and to be due and payable on the first day of the month following the initial advance and on the first day of each and every month thereafter. The said principal sum or the amount thereof outstanding, with accrued interest, shall be due and payable on May 29, 1989.

This note shall bear interest at the rate of one and one-quarter (1-1/4%) percent per annum. However, on or after November 29, 1988 said rate to be paid shall be increased to a rate not to exceed six (6%) percent per annum above the base rate of interest established from time to time by the Bankers Trust Company of New York City, for responsible and substantial commercial customers, such increased rate to be determined by CPC in its sole discretion. (Said rate of interest charged by Bankers Trust Company of New York City is hereinafter sometimes referred to as the "Bankers Prime Rate"). Notwithstanding the preceding sentence, it is agreed that if

(a) prior to November 29, 1988 the Maker has completed the improvements to 1974 51st Street, Brooklyn, New York (the "Premises") in accordance with the terms of a certain building loan agreement of even date herewith executed by the Maker and CPC; and

(b) Maker has duly filed (or in the event filing is not then permitted, has prepared and submitted) all necessary documentation required (1) for tax abatement and exemption benefits under Section J51 of the New York City Administrative Code, and (2) for the application for final determination of the controlled and/or stabilized rents at the Premises to the New

York State Division of Housing and Community Renewal ("DHCR") or to such other agency as is empowered by statute to determine such rents in lieu of DHCR, or (3) in the event the Indebtedness is advanced in connection with a participation loan by the Department of Housing Preservation and Development ("HPD"), pursuant to Article XV of the Private Housing Finance Law, for the application to HPD for the final determination of restructured rentals in the Premises; and

(c) Maker is ready, willing, and able to convert to permanent financing, if applicable, pursuant to the commitment letter from CPC and HPD to Maker dated October 22, 1987;

then said interest rate shall remain at one and one-quarter (1-1/4%) percent per annum. If the Bankers Prime Rate is discontinued as a standard or becomes unascertainable, the holder hereof shall designate a comparable reference rate and the interest shall then be due and payable at the aforesaid rates of interest above such substituted reference rate.

Notwithstanding the foregoing, interest only, computed as aforesaid, shall be due and payable on the first day of December, 1987 and on the first day of each and every month thereafter until the said principal sum and all accrued interest shall be fully paid.

In the event that any payment due under this note or the mortgage securing payment hereof shall become overdue for a period in excess of fifteen (15) days, there shall be due, in addition to the other sums then due hereunder, a "late charge" of four percent (4%) of any such overdue payment.

It is not intended hereby to charge interest at a rate in excess of the maximum rate of interest permitted to be charged to the Maker under applicable law, but if, notwithstanding, interest in excess of the said maximum rate shall be paid hereunder, the excess shall be retained by the holder of this note as additional cash collateral for the payment of said principal sum, or the amount thereof outstanding.

IT IS EXPRESSLY AGREED that the said principal sum shall become due at the option of the holder of this note on the happening of any default or event by which, under the terms of the mortgage given to secure this note, or under the provisions of any agreement extending and/or modifying the mortgage, as the same may be consolidated, or under the terms of the said building loan agreement executed this date pursuant to which this note has been issued, said principal sum may or shall become due and payable; also that all of the covenants, conditions of the said building loan agreement this date are hereby made part of this instrument.

2

Maker and all endorsers, sureties and guarantors hereby jointly and severally waive presentation for payment, demand for payment, notice of non-payment, protest, notice of protest, diligence in collecting, notice of dishonor; and without further notice, hereby consent to renewals, extensions or partial payments either before or after maturity, reduction in the rate of interest on any money owing by it at any time on the note and whether involving the present or any future holder of this note.

This note is secured by a mortgage (the "mortgage") validly made, executed and delivered simultaneously herewith upon real property in the County of Kings, City and State of New York, known as and by the street number 1974 51st Street, Brooklyn, New York, identified as Tax Lot No. 35 of Block 5469 of the Tax Map of the City of New York and is issued under the said building loan agreement between the Maker and CPC of even date relating to the rehabilitation of the improvements on such property.

This note may not be modified or terminated orally. No requirements hereby may be waived at any time except by a writing signed by the holder and no waiver shall be operative upon other than a single occasion. In any action or proceeding based on or arising out of the indebtedness evidenced by this note, or against any or all of the security for this note, no defense of adequacy of security or that resort must first be had to any particular security or remedy or to any other person shall be asserted. All rights and remedies hereby specified are intended to be cumulative and not in substitution for any right or remedy otherwise available. The terms "Maker" and "CPC" whenever used herein include the respective successors and assigns of the original parties.

This note is made and delivered in the Borough of Manhattan, County, City and State of New York, where all advances and repayments shall be made. Maker agrees that this note shall be construed in accordance with and governed by the laws of said State.

CPC agrees that it will not institute any separate action for a money judgment against Maker on the mortgage, the building loan agreement, or this note, or on any covenant therein or herein contained for the payment of the indebtedness, or for any default thereunder or hereunder. Notwithstanding the foregoing, in the event CPC institutes a foreclosure proceeding under the mortgage, it herein specifically reserves its right to

3

institute an action at law against Maker or to make claim in such foreclosure proceeding for the payment to it, or to a Receiver, if appointed in said foreclosure proceeding, of any and all security deposits received by Maker (and not transferred by Maker in connection with a conveyance of the mortgaged premises to any other person or corporation which has assumed full responsibility for such security deposits, which conveyance has been consented to by CPC if required pursuant to the terms and conditions of the mortgage) or in possession of Maker under terms existing at the time of the commencement of said foreclosure. In such an action or proceeding as described in the preceding sentence, CPC may seek a money judgment against the Maker, as well as a deficiency judgment for such security deposits, but CPC may not seek a money judgment or a deficiency judgment against Maker for any amount in excess of the amount of such security deposits, it being agreed that, except for the aforementioned liability for such security deposits, neither Maker nor any officer, director, or principal thereof shall have any personal liability under the mortgage, the building loan agreement, or this note.

Beginning with the fifth anniversary year following the date upon which the Permanent Loan Conversion, as defined in the commitment letter from CPC and HPD to Maker dated October 22, 1987, occurs, Maker shall have the right to prepay the entire principal indebtedness upon thirty (30) days' written notice to CPC without penalty.

IN WITNESS WHEREOF, the said Maker has caused these presents to be duly executed and sealed the day and year first above written.

WITNESSED:

1974 REALTY ASSOCIATES,
a New York limited
partnership

By: PR & PR REALTY CORP.
General Partner

By: _____
Jonathan Poole
President

4

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

On this 24th day of November, 1987, before me personally came Jonathan Poole, to me known, and who, being duly sworn, did depose and say: That he resides at 245 East 19th Street, New York, New York 10019; that he is the President of PR & PR REALTY CORP., a corporation duly organized under the laws of the State of New York, having its principal place of business at 475 Tuckahoe Road, Yonkers, New York; that said corporation is a General Partner of 1974 REALTY ASSOCIATES a General Partnership, the firm described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to said instrument is such a corporate seal; that it was affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order, and he acknowledged to me that the said instrument was executed by said corporation for and in behalf of said partnership.

_____
Notary Public

SAMUEL H. KLAGSBRUN
Notary Public, State of New York
No. 31-4760502
Qualified in New York County
Commission Expires May 31, 1988

#388

## SECOND BUILDING LOAN MORTGAGE

#388

THIS MORTGAGE, made the 24 day of November, nineteen hundred and eighty-seven between 1974 REALTY ASSOCIATES, a New York limited partnership having an address c/o Eiges & Eiges, 201 Eastern Parkway, Brooklyn, New York 11238 (hereinafter designated as "mortgagor") and THE COMMUNITY PRESERVATION CORPORATION (formerly, THE NEW YORK CITY COMMUNITY PRESERVATION CORPORATION), a corporation duly organized and existing under the laws of the State of New York with its principal office at 5 West 37th Street, New York, New York 10018 (hereinafter designated as "mortgagee")

WITNESSETH, that to secure the payment of an indebtedness in the sum of ONE MILLION FOUR HUNDRED SEVENTY-FIVE THOUSAND and 00/100 DOLLARS ($1,475,000.00) lawful money of the United States, to be paid, with interest thereon according to a certain note or obligation bearing even date herewith, the mortgagor hereby mortgages to the mortgagee the following premises (the "premises"): 1974 51st Street, County of Kings, City and State of New York, more fully described on Exhibit "A" annexed hereto and made a part hereof.

TOGETHER with all the right, title and interest, if any, of the mortgagor of, in and to strips and gores of land or land under water adjacent to or adjoining the premises, and to the land lying in the bed of any street, road, avenue, lane or right of way as they now exist or formerly existed, included in, in front of, or adjoining the premises.

TOGETHER with the easements, riparian rights and appurtenances, and all the estate and rights of the mortgagor in and to the premises.

TOGETHER with all buildings, structures and improvements (hereinafter referred to as "buildings") now or hereafter erected or constructed upon the premises.

TOGETHER with all attachments, appliances, fittings, furnishings, fixtures and articles of personal property, and each and every improvement (including but not limited to all gas and electric ranges, refrigerators, gas and oil burners, automatic stokers, and all sprinkler, plumbing, heating, air-conditioning, electric power or lighting, incinerating, vacuum cleaning, ventilating and cooling systems, with their and each of their respective appurtenant furnaces, boilers, engines, motors, dynamos, radiators, pipes, wiring, and other apparatus, and all lighting fixtures, doors, ice-boxes,

REEL 2149 PAGE 2003

cupboards, cabinets, partitions, mantels, elevators, electric motors, pumps, shades, storm sash, screens, shutters and awnings), and all additions thereto and replacements thereof, now in or upon or which shall hereafter be placed in or upon the premises, adapted to and/or necessary for the proper use and enjoyment of the same (the "Equipment") all of which are hereby represented and declared by the mortgagor to be the sole and unconditional property of the mortgagor and to be part of the freehold and covered by this mortgagee, and subject to the same laws and interest of mortgagor in and to any security agreement hereafter and limitations applicable to real property; and also all right, title and interest of mortgagor in and to any security agreement hereafter consented to in writing by mortgagee covering any Equipment as well as in the Equipment subject thereto.

TOGETHER with any and all awards and interest thereon heretofore made and hereafter to be made by any Municipal, State, Federal or other authority or corporation to any owner of the premises including any awards for any changes of grade of streets affecting the premises, or for the taking of any incorporeal rights or easements appurtenant to the premises, which awards and interest thereon and the right to receive same are hereby assigned to the mortgagee; and the mortgagee is hereby authorized and empowered to collect and receive the proceeds of any such awards and interest from the authorities making the same and to give proper receipts and acquittances therefor, and to apply the same to payment on account of the indebtedness and interest thereon hereby secured, notwith-standing that said indebtedness and interest may not be then due and payable; and the mortgagor hereby covenants, upon request by the mortgagee, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award and interest thereon to the mortgagee, free, clear and discharged of any and all encumbrances.

AND the mortgagor covenants with the mortgagee as follows:

1. That the mortgagor will pay the indebtedness as hereinbefore provided.

2. That the mortgagor warrants the title to the premises and Equipment.

3. That the mortgagor will keep the buildings and Equipment insured against loss by fire and against

REEL 2149 PAGE 2004

loss by such hazard other than fire as the mortgagee may designate for the benefit of, in the amount required by, but in any event in an amount sufficient to prevent the application of any co-insurance clause, and in companies approved by the mortgagee. The mortgagor will assign and deliver the policies therefor to the mortgagee and such policies shall have endorsed thereon the standard New York mortgagee clause in the name of the mortgagee. If the mortgagor fails so to insure, or so to assign and deliver the policies, the mortgagee may obtain such insurance in such amounts and all premiums paid therefor shall be repaid by the mortgagor to the mortgagee with interest thereon on demand, and in default of such repayment, at the option of the mortgagee, may be added to the indebtedness and be secured hereby. All insurance policies covering the premises, including any additional fire and other hazard insurance policies in excess of the insurance coverage required by the mortgagee, shall be collateral security for the payment of the indebtedness and the interest thereon, shall be delivered to the mortgagee and shall be endorsed so that loss thereunder shall be payable to the mortgagee as its interest may appear. Any unearned premiums thereon and right, title and interest in and to said policies are hereby assigned to the mortgagee and upon default of the mortgagor shall thereupon be the sole property of the mortgagee without offset or reimbursement. The mortgagor hereby assigns to the mortgagee all claims for loss or damage under all insurance policies at any time covering the premises. Any monies received by the mortgagee for loss under any such insurance may be retained by the mortgagee and at the option of the mortgagee be applied toward payment or reduction of the indebtedness and the interest thereon or all or part of the same may be paid to the then owner of the premises for any purpose or object satisfactory to the mortgagee. The mortgagor agrees that the application of the proceeds of any insurance covering the premises will be governed solely by this covenant and hereby waives, and agrees that no covenant, stipulation or agreement in this mortgage shall be construed pursuant to or under Section 254 sub-section 4 of the Real Property Law of New York.

4.   That no building or Equipment on the premises shall be altered, removed or demolished without the

3

REEL 2149 PAGE 2003

express written consent of the mortgagee except in accordance with the Building Loan Agreement pursuant to the plans and specifications previously submitted to the mortgagee ("Permitted Alteration"). That no property or Equipment which may be subject to a security interest shall hereafter be placed in or upon the premises or buildings without the express written consent of the mortgagee first had and obtained.

5.   That the mortgagor shall maintain the premises in reasonably good repair (and hereby empowers the mortgagee to effect such repairs and add the amounts expended to the indebtedness to be secured by this mortgage); shall comply with all requirements of Federal, State or local departments, authorities, bureaus or officials with respect thereto, shall repair or replace any buildings or Equipment on the premises damaged by fire or other hazard to the satisfaction of the mortgagee, shall not suffer or permit any waste, shall not use the premises or Equipment in any way that violates any Federal, State or local law, ordinance, rule, regulation or requirement or any restrictive covenant upon the use of the premises. The mortgagee, or its agents, shall have the right to inspect the premises from time to time at any reasonable hour of the day.

6.   That the mortgagor will pay all taxes, assessments, water rates and charges, sewer rents and vault charges and in default thereof, the mortgagee may pay the same.

7.   As additional collateral, the mortgagor will pay to the mortgagee, in addition to and simultaneously with the installments of principal and interest, an amount sufficient to accumulate the sum (hereinafter called "Escrow Fund"), estimated by the mortgagee to be required to pay the real estate taxes, assessments, water rents, sewer rents, vault charges and other taxes or charges on/or against the mortgaged premises and the fire and other hazard insurance premiums (all hereinafter called the "Charges") one month before the date when the same become due. The mortgagee shall apply the Escrow Fund to payment of the Charges as they become due. Any amount by which the Escrow Fund shall, at any time and from time to time, in the opinion of the mortgagee, exceed the sum required for the purpose of the Escrow Fund, shall be returned to the mortgagor or applied on any indebtedness secured by this mortgage, or credited on subsequent installments for the Escrow Fund whichever of said

4

alternatives the mortgagee may select. Any amount by which the Escrow Fund shall, at any time or from time to time, in the opinion of the mortgagee be deficient for the purpose of the Escrow Fund shall be paid by the mortgagor to the mortgagee within twenty (20) days after written notice and demand. This paragraph shall be applicable only after conversion of the construction loan to a permanent loan.

8.    In the event that any payment due under this mortgage or under the note or obligation secured hereby shall become overdue for a period in excess of fifteen (15) days, a "late charge" of four per centum (4%) of any such overdue payment, may, at the option of the mortgagee, be charged for the purpose of defraying the expense incident to handling such delinquent account.

9.    That the mortgagor within ten (10) days upon request in person or within twenty (20) days upon request by mail will furnish a written statement duly acknowledged of the amount due on this mortgage and whether any offsets or defenses exist against the mortgage debt.

10.   That the whole of the indebtedness and interest shall become due at the option of the mortgagee: after default in payment of any installment of principal or of interest for twenty (20) days; or after default in the payment of any tax, water rate or charge, sewer rent, vault charge or assessment for thirty (30) days after notice and demand; or after default after notice and demand either in assigning and delivering the policies insuring the buildings and Equipment or in reimbursing the mortgagee for premiums paid on such insurance, as herein provided; or after default upon request in furnishing a statement of the amount due on the mortgage and whether any offsets or defenses exist against the mortgage debt, as herein provided.

11.   That the whole of the indebtedness shall become due at the option of the mortgagee:

(a)   On the expiration of thirty (30) days from the passing, after the date hereof, of any Federal, State or Municipal law deducting from the value of land for the purposes of taxation any lien thereon or changing in any way the laws now in

5

REEL 2149 PAGE 2001

force for the taxation of mortgages or debts secured by mortgages so as to impose a tax on this mortgage or the debts secured thereby.

(b) Upon the failure of the mortgagor to furnish receipts or satisfactory proofs showing the payment of any tax, assessment, water rate or charge, sewer rent or vault charge within thirty (30) days after request therefor shall have been made.

(c) Upon the failure of the mortgagor to maintain the buildings and Equipment thereon in reasonably good repair or to comply with the requirements of any Federal, State or local department, authority, bureau or official within three months after an order making such requirements has been issued.

(d) Upon the failure of the mortgagor to repair or replace, within three months, any buildings or Equipment covered by the mortgage damaged by fire or other hazard unless insurance proceeds resulting therefrom have been retained by the mortgagee and applied towards payment or reduction of the indebtedness and the interest thereon.

(e) Upon the commission of waste by the mortgagor.

(f) Upon the use of the premises or Equipment covered by this mortgage in any way which violates any Federal, State or local law, ordinance, rule, regulation or requirement or any restrictive covenant upon the use of the premises or Equipment.

(g) Upon the failure of the mortgagor to permit the mortgagee at any reasonable time to enter upon the premises for the purpose of inspecting the same.

(h) Upon the actual or threatened, partial or total alteration, removal or demolition of any building erected upon said premises or Equipment, or the assignment of the whole or any part of the rents of the premises, or if the buildings on the premises are vacated or abandoned.

6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

Index No.        Year
21023/02

THE COMMUNITY PRESERVATION CORPORATION,

Plaintiff(s),

- against -

1974 REALTY ASSOCIATES, ET AL.

Defendant(s).

---

AFFIRMATION IN OPPOSITION TO DEFENDANTS' CROSS MOTION AND
IN FURTHER SUPPORT OF JUDGMENT OF FORECLOSURE AND SALE

---

CERTILMAN BALIN ADLER & HYMAN, LLP
Attorney(s) for

Plaintiff

Office and Post Office Address, Telephone

90 MERRICK AVENUE
EAST MEADOW, NEW YORK 11554
(516) 296-7000
FAX (516) 296-7111

---

To

Attorney(s) for

To the best of the undersigned's knowledge,
information and belief, formed after an inquiry
reasonable under the circumstances, the within
documents and contentions contained herein are
not frivolous as defined in 22 NYCRR 130-1.1-a.

Dated: . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

PLEASE TAKE NOTICE:

☐ NOTICE OF ENTRY

that the within is a *(certified) true copy of a*
duly entered in the office of the clerk of the within named court on

☐ NOTICE OF SETTLEMENT

that an order
will be presented for settlement to the HON.
within named Court, at
on

of which the within is a true copy
one of the judges of the

at                         M.

Dated,

Yours, etc.