SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

ORIGINAL

THE COMMUNITY PRESERVATION CORPORATION,

                                    Plaintiff,

            - against -

1974 REALTY ASSOCIATES,

                                    Defendant.

Index No. 21023/02

**REPLY AFFIRMATION IN
FURTHER SUPPORT OF
CROSS-MOTION TO DISMISS
COMPLAINT**

1974 REALTY ASSOCIATES,

                        Third Party Plaintiff,

            - against -

CORNICK GARBER & SANDLER LLP,

                        Third Party Defendant.

**ANDREA L. ROSCHELLE,** an attorney admitted to practice law in the Courts of this State, alleges the truth of the following under penalty of perjury:

    1.      I am a member of Starr Associates LLP, counsel for defendant 1974 Realty Associates ("Associates"), a New York Limited Partnership.   Associates is the owner of 1974 51st Street, Brooklyn, New York  ("Premises") that is encumbered by various mortgages on which plaintiff wrongfully seeks to foreclose in this action.  Having been engaged as Associates' counsel nearly since the inception of this matter, I am fully familiar with the facts and circumstances recited below, based on facts known to me to be true, conversations I have had with agents and employees of Associates and my own review of the books and records maintained by Associates.

2.      I submit this reply affirmation in further support of the cross-motion by Associates pursuant to (i) CPLR 3211(e) dismissing the complaint on the ground that the Court lacks jurisdiction over Associates because Associates was never properly served with process and (ii) CPLR 306-b, on the ground that plaintiff never made a formal motion to any Court for an extension of time to effect service and that no good cause has been shown for the nearly three (3) year delay in effecting service and (iii) CPLR 3215(c), on the ground that plaintiff abandoned the complaint by failing to take proceedings for the entry of judgment within one year of an alleged default, which is part of a pattern and practice of neglect exhibited by plaintiff in its prosecution of this litigation.

3.      The Court is respectfully referred to the moving affidavit of Jonathan Poole, sworn to May 13, 2005 ("Poole Affidavit) and the moving affidavit of Elizabeth Crane, sworn to May 11, 2005 ("Crane Affidavit") (collectively "Moving Affidavits"), for a full recitation of the relevant and material facts supporting the cross-motion to dismiss the complaint.

## PRELIMINARY STATEMENT

4.      Challenged to overcome the fatal deficiencies in service of process and other numerous procedural blunders that deprive this Court of jurisdiction over Associates and render service of process in this foreclosure action wholly defective, in its half-hearted opposition, plaintiff has failed to proffer a single relevant fact to refute Associates' challenge to service by a person with competent legal knowledge, relying instead on conclusory allegations in an affirmation by plaintiff's counsel.

5.      Stripped of polemics, plaintiff's opposition boils down to the proposition that this Court should overlook (i) defective, belated service, which was wholly insufficient to confer jurisdiction upon this Court (ii) plaintiff's failure to seek a formal extension from this

Court to serve process late as the CPLR requires; (iii) plaintiff's failure to take proceedings to enter judgment within one year after a claimed default as the CPLR requires and (iv) the myriad procedural and other deficiencies in plaintiff's latest motion for a judgment of foreclosure and sale which, unfortunately, typifies plaintiff's lackadaisical attitude in prosecuting this case. The reality appears to be that plaintiff and its counsel know full well that this Court has been deprived of jurisdiction for failure of service of process, as Associates has contended since 2002, and, as a result, plaintiff has tried to sweep the myriad gaffes under the rug. Plaintiff's counsel has since been trying in vain to squeeze the facts of this case into the "thousands" of boilerplate residential foreclosure pleadings it has submitted and hopes that an overburdened judiciary will overlook counsel's mistakes.

6.        When the Court examines plaintiff's response to the cross-motion to dismiss the complaint, it will see readily that plaintiff has either ignored entirely or conceded the material facts that entitle Associates to the relief sought in its cross-motion to dismiss the complaint. Accordingly, the cross-motion must be granted.

## ASSOCIATES' MOTION TO DISMISS THE COMPLAINT MUST BE GRANTED

### The Court has been Deprived of Jurisdiction due to Improper Service of Process

7.        Although disregarded entirely in plaintiff's response to Associates' cross-motion to dismiss, plaintiff's own affidavit of service states that, on October 27, 2004, the summons and complaint were served on Associates by serving Jonathan Poole at his residence, in his capacity as president of Associate's general partner, PR & PR Realty Corp. ("PR"), by leaving the summons and complaint with Jose Molina, alleged to be a concierge at Mr. Poole's apartment building. See Exhibit H to Associates' Documentary Supplement, submitted in support of the Cross-motion to dismiss the complaint.

8.    As the Moving Affidavits demonstrate, however, this type of substituted service claimed to have been effected upon PR was ineffective to confer jurisdiction upon the Court. Poole Affidavit, ¶¶36-37.  Pursuant to CPLR 311(a)(1) the process server must tender process directly to an "authorized" corporate representative.  Delivery to an unauthorized person, such as a concierge, is ineffective to confer jurisdiction.  Lakeside Concrete Corp. v. Pine Hollow Building Corp., 104 A.D.2d 551, 479 N.Y.S2d 256 (2d Dept. 1984) (jurisdiction over a corporation cannot be acquired via substituted service).  See also Napic v. Fverfa Investments, Inc., 193 A.D.2d 549, 597 N.Y.S2d 707 (1st Dept. 1993) (service upon concierge with mailing insufficient to confer jurisdiction over corporation).

9.    In a futile attempt to defend against the fatal blow dealt to plaintiff's position on this cross-motion, plaintiff claims that that it is lawful to serve Associates by delivery to the purported concierge at a building plaintiff claims is Mr. Poole's residence, since Associates is not a corporation, but a limited partnership, directing the Court instead to an analysis under CPLR 310.  Plaintiff's counsel goes on to contend that service upon a limited partnership is properly made on a person of suitable age and discretion at the home of the "general partner". Affirmation of Susan McWalters, ¶11 dated May 20, 2005 ("Mc Walters Affirmation"). There are numerous glaring problems with this position.

10.    First, plaintiff is simply dead wrong when it takes the position (for the first time in three years of litigation) that Mr. Poole individually is Associates' general partner, as if plaintiff could somehow rescue its defective service post-hoc. In point of fact, PR is Associate's managing corporate general partner, and plaintiff is well aware of that fact. Indeed, plaintiff ignores its own affidavit of service, which states that Mr. Poole was allegedly served in his capacity as "president of PR & PR Realty Corp.". See Exhibit H to Associates' Documentary

Supplement, submitted in support of the cross-motion to dismiss the complaint. As a result, plaintiff was obliged to effect service upon PR in accordance with CPLR 311.

11.    Yet, the Court would of necessity come to the same conclusion under an analysis of CPLR 310. Indeed, the language in CPLR 310-a that "personal service...shall be made....in the manner provided by law...*as if such person was the defendant*", demonstrates that service on the general partner, PR, must have been made in accordance with CPLR 311(a) as if PR itself were the defendant. See e.g. Maine v. Jay Street Realty, 187 Misc.2d 376, 722 N.Y.S.2d 726 (Sup. Ct. New York Co. 200) (the language of CPLR 310-a incorporates by reference other personal service provisions of the CPLR). Simply put, no facts alleged by plaintiff in this case would justify service upon Associates through PR by a person of (alleged) suitable age and discretion.

12.    The only remaining hint of an argument, referenced only blithely in the Mc Walters Affirmation, is that service was somehow "blocked" by Mr. Poole, so as to somehow justify attempted service upon a purported concierge. Mc Walters Affirmation, ¶11. Even if the Court were permitted to ignore the fact Ms. McWalters has no personal knowledge of the facts and circumstances surrounding service, plaintiff has failed to support the naked allegation with competent evidence, such as a supplemental affidavit from the process server. Indeed, there is nothing on the face of the affidavit of service itself to suggest anything of the kind. The Court must not permit plaintiff to subvert the mandate of the CPLR with regard to jurisdiction.

13.    Even if the Court were to overlook these fatal errors in service and consider the affidavit of service as prima facie evidence of service upon Associates, service would fail. As the Moving Affidavits have demonstrated, Jose Molina, who was alleged to be a concierge at the apartment building where Mr. Poole resides, is not only an unauthorized person with regard to

service upon PR, but no such person was employed there on the date the process server alleges to have served the summons and complaint. See generally, Crane Affidavit and Poole Affidavit, ¶¶38, 39. Nowhere to be found in plaintiff's opposition is any refutation that the service purportedly effected by delivery on "Molina" was anything other than phantom.

14.     It settled law that when service of process is denied, the affidavit of service is rendered inconclusive as to prima facie evidence of service and it is incumbent upon a party asserting jurisdiction to demonstrate proper service by a fair preponderance of the evidence. Blue Spot v. Superior Merchandise Electronics Co., 150 A.D.2d 175 N.Y.S.2d 787 (1st Dept. 1989); Anton v. Amato, 101 A.D.2d 819 475 N.Y.S.2d 298 (2nd Dept. 1984) (trial court erred when it considered affidavit of service as prima facie evidence of service in the face of defendants sworn denial of receipt). Plaintiff's utter silence on this issue speaks volumes about the merits of its position.

Plaintiff's Failure to Seek a Formal Extension of Time is Fatal to this Action

15.     In the Moving Affidavits, Associates argued that CPLR 306-b required a formal motion before late service may be effected and that plaintiff never sought to have the Court bless its nearly three (3) year delay in effecting service after the initial filing in 2002 of the summons and complaint. Plaintiff's violation of CPLR 306-b requires that the complaint be dismissed.

16.     To justify its late service, plaintiff claims (without support) that CPLR 306-b "specifically permits" the court to "ratify" late service. Mc Walters Affidavit, ¶12. In point of fact, the Court may only extend plaintiff's time to effect late service upon a proper, formal motion. McKinney's Practice Commentaries, CPLR 306-b:3, Extension of Time to Serve Process. (plaintiff must either "move for an extension" or . . .  cross-move for such relief in

opposition to the defendant's motion to dismiss").

17.    Counsel has nowhere demonstrated that there is good cause or shown that it would be in the interests of justice to permit late service, much less explain why no formal motion has been made to the Court to this day for the relief plaintiff now expects this Court to dispense. Indeed, if the facts of this case do not mandate a denial of an extension under CPLR 306-b, there are essentially no limits to the availability of relief under this statute. We respectfully submit that this is not what the legislature intended.

### The Complaint Must be Dismissed as Abandoned Pursuant to CPLR 3015(c)

18.    The Court will recall that the most recent incarnation of plaintiff's motion for a judgment of foreclosure and sale seeks relief based on the alleged re-service upon a purported concierge in Mr. Poole's building on October 27, 2004, the original service in this case having been challenged twice by Associates in various motions before the Court and preserved in Associates' answer to the complaint. In fact, faced with Associates' challenges to service, plaintiff withdrew its prior motion for a judgment of foreclosure and sale, which was filed originally on December 8, 2003. Poole Affidavit, ¶¶16, 25.

19.    The paradox now faced by plaintiff in the face of its two (2) improper service attempts, is that while in opposition to Associates' cross-motion to dismiss the complaint, it refuses to actually concede that its first service was improper, it relies on the second service for the relief it now seeks in the main, which is a motion for a judgment of foreclosure and sale. Plaintiff cannot have it both ways, but, either way plaintiff chooses to turn, its service must fail. As has been explained above, plaintiff has broken nearly every rule of law and procedure in connection with this "re-service" and, accordingly, reliance on this purported "re-service" is to no avail.

7

20.    Reliance on the original attempt at service (alleged to have been made on July 25, 2002) is equally misplaced. Clearly, had plaintiff possessed a modicum of confidence in the first service, it would have proceeded to judgment on that basis. Instead, plaintiff delayed for nearly three (3) years before making the current motion for a judgment of foreclosure and sale.

21.    The Moving Affidavits demonstrate that plaintiff failed to "take proceedings" to enter judgment within one year after it alleges Associates originally defaulted in answering and that the Court is required to dismiss the complaint as a result. CPLR 3015(c) directs that the Court, sua sponte or on motion, "shall" dismiss the complaint as abandoned under these circumstances. Poole Affidavit, ¶¶40, 41.

22.    Grasping at straws, counsel falsely claims that plaintiff "took proceedings" within one year of the original attempt at service by moving for a judgment of foreclosure and sale on December 13, 2002, which was subsequently withdrawn. McWalters Affirmation, ¶2. Counsel is clearly mistaken, as no such motion was filed or submitted on that date, or at any time within one (1) year of the alleged default. See court docket sheet, a copy of which is annexed hereto as Exhibit "A". Also conspicuously absent from plaintiff's papers is a copy of the motion counsel alleges was timely submitted. In any event, counsel never explains how plaintiff may rely on a motion that has been withdrawn as proof of its diligent prosecution of this action.

## CONCLUSION

23.    It would be hard to imagine a case less diligently prosecuted and one less deserving of this Court's consideration on an application based on equity. Plaintiff has twice seen fit to ignore nearly every statutory mandate regarding service of process and barely pays lip service to any of the equitable considerations this Court must weigh in deciding whether to excuse them.   All of the factors listed above, together with those set forth in the Moving

Affidavits, weigh heavily against this Court granting any deference to plaintiff. Rather, the Court must give meaning to the statutes which require that the complaint be dismissed for want of jurisdiction due to the myriad failures in the service of process. To sustain the service as plaintiff urges would encourage carelessness, or worse, increase the risk of default by parties who in fact failed to receive a summons, which is precisely what these statutes are designed to protect against.

WHEREFORE, plaintiff's motion for a judgment of foreclosure and sale must be denied, and Associates' cross-motion granted, with costs and disbursements awarded to Associates.

Dated: New York, New York
     June 1, 2005

ANDREA L. ROSCHELLE

9

2002/21023 Reply (Page 10 of 13)

## ATTORNEY CERTIFICATION

     To the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation and filing of the papers herein are not "frivolous", as defined in subsection (c) of section 130-1.1 of NYCRR.

_Andrea L. Roschelle_

Andrea L. Roschelle, Esq.

Dated: New York, New York
       June 2, 2005

PD0915

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
--------------------------------------------

THE COMMUNITY PRESERVATION CORPORATION,

                          Plaintiff,

              - against -                                    Index No. 21023/02

1974 REALTY ASSOCIATES,                                      **AFFIDAVIT OF SERVICE**

                          Defendant.
--------------------------------------------

--------------------------------------------

1974 REALTY ASSOCIATES,

                   Third Party Plaintiff,

              - against -

CORNICK GARBER & SANDLER LLP,

                   Third Party Defendant.
--------------------------------------------

STATE OF NEW YORK      )
                       ) SS.:
COUNTY OF NEW YORK     )

         ANA GENAO, being duly sworn, deposes and says:

         I am not a party to the within action, am over 18 years of age and reside in the State

of New York.

         On June 2, 2005, I served the within **REPLY AFFIRMATION IN FURTHER**

**SUPPORT OF CROSS-MOTION TO DISMISS COMPLAINT** upon the persons listed at the

addresses set forth below by sending a copy thereof to their offices via messenger using Elite

Couriers, New York, New York:

                   Susan McWalters, Esq.
                   CERTILMAN BALIN ADLER & HYMAN, LLP
                   Attorneys for Plaintiff
                   90 Merrick Avenue
                   East Meadow, New York 11554

PD1207

Dan Goldwasser, Esq.
VEDDER, PRICE, KAUFMAN & KAMMHOLZ
Attorneys for Third-Party Defendant Cornick Garber & Sandler, LLP
805 Third Avenue
New York, New York 10022

ANA GENAO

Sworn to before me this
2nd day of April, 2005.

Notary Public

ANDREA ROSCHELLE
Notary Public, State of New York
No. 02RO6025801
Qualified in Westchester County
Commission Expires 06/01/2007

PD1207

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

THE COMMUNITY PRESERVATION CORPORATION,

                                 Plaintiff,

                - against -

1974 REALTY ASSOCIATES,

                              Defendant.

---

1974 REALTY ASSOCIATES,

                Third Party Plaintiff,

                - against -

CORNICK GARBER & SANDLER LLP,

                Third Party Defendant.

Index No. 21023/02

**AFFIDAVIT IN SUPPORT OF
CROSS-MOTION TO DISMISS
COMPLAINT AND IN
OPPOSITION TO MOTION FOR
JUDGMENT OF
FORECLOSURE AND SALE**

STATE OF NEW YORK    )
                           ) ss:
COUNTY OF NEW YORK   )

     **JONATHAN POOLE,** being duly sworn, deposes and says:

     1.  I am the president of PR & PR Realty Corp., the managing general partner of defendant and third party plaintiff, 1974 Realty Associates ("Associates"), which is a New York Limited Partnership. Associates is the owner of 1974 51st Street, Brooklyn, New York ("Premises"), a rental apartment building located in the Borough Park section of Brooklyn that is encumbered by various mortgages on which plaintiff

ALR1945

wrongfully seeks to foreclose in this action. I am fully familiar with the facts and circumstances recited below, based on facts known to me to be true, conversations I have had with agents and employees of Associates and my own review of the books and records maintained by Associates.

<u>PRELIMINARY STATEMENT</u>

2. Together with the accompanying affidavit of Elizabeth Crane, I submit this affidavit in support of the cross-motion by Associates pursuant to (i) CPLR 3211(e) dismissing the complaint on the ground that the Court lacks jurisdiction over Associates because Associates was never properly served with process and (ii) CPLR 3215(c), on the ground that plaintiff abandoned the complaint by failing to take proceedings for the entry of judgment within one year of an alleged default, which is part of a pattern and practice of neglect exhibited by plaintiff in its prosecution of this litigation.

3. This affidavit shall also address the myriad reasons why plaintiff's motion for a judgment of foreclosure and sale is not only legally deficient but factually unsustainable and should therefore be denied. Even if the Court could overlook the fatal defects in process and neglect by plaintiff in the prosecution of this action, plaintiff's latest application for a judgment of foreclosure and sale must fail. It is a near carbon-copy of an earlier motion for the identical relief abandoned by plaintiff more than one year before it made its current application, is supported by boilerplate moving papers of an attorney with no knowledge of the facts, is riddled with material errors and misstatements and fails to establish plaintiff's right to the relief sought. Rarely will this Court see a motion so lacking in merit.

4. Finally, as will be detailed below, at the very least, material, triable issues of fact abound, none of which have been addressed by plaintiff in its moving papers, that would preclude the granting of a judgment of foreclosure and sale, including whether plaintiff has been culpable in the default alleged. Accordingly, plaintiff's motion must be denied.

Factual Background

5. Associates acquired ownership of the Premises on or about November 24, 1987. The Premises were among several dilapidated and abandoned buildings in a community suffering from the effects of crime and poverty contributing to the urban blight surrounding its residents.

6. I was immediately elected president of Associates' managing general partner, PR & PR Realty Corp. ("Corporation"), since I had acquired considerable expertise in urban renewal projects and experience in property management, and thus was chosen by Associates to negotiate for the purchase of the Premises and run the project. I was also charged with the responsibility of securing participation for the Premises in various housing programs, obtaining financing from the City's Department of Housing, Preservation and Development ("HPD") and negotiating the terms of other financing with plaintiff for whom I had been employed as a loan officer.

7. In accordance with various municipal programs and pursuant to a building loan agreement and related documents executed by and among Associates, plaintiff and HPD, Associates renovated and rehabilitated the Premises in 1989 and began to lease the renovated apartments to members of the Borough Park community. The agreements among Associates, plaintiff and HPD required Associates to reserve in

3

excess of forty percent (40%) of the renovated apartments for low income tenants and to lease a portion of the units to homeless families or individuals referred by HPD.

8. In conjunction with the acquisition and rehabilitation of the Premises, Associates entered into a series of notes, mortgages and other instruments (collectively, "Mortgage Agreements") evidencing the construction and permanent loan financing advanced to it by plaintiff and HPD. Upon information and belief, plaintiff is the lender of only a fraction of the proceeds of the construction loan ("Construction Loan") portion of the financing obtained by Associates in conjunction with the acquisition of the Premises (in the principal sum of one hundred sixty five thousand dollars ($165,000.00)), and an identical sum in permanent financing, the balance having been lent by HPD, but plaintiff acts as the servicing agent for all of the Mortgage Agreements.

9. As is relevant here, the Mortgage Agreements provide that Associates must convert the Construction Loan to permanent financing on or before April 1, 1999. The Court should be advised that it is ostensibly due to Associates' current inability to convert the Construction Loan to permanent financing, and not due to any failure of payment under the Mortgage Agreements, that plaintiff has declared Associates in default and demanded the immediate payment of nearly three million dollars ($3,000,000) in principal, default interest and other charges, which it seeks to recover by the commencement of this action. See complaint, paragraph Ninth.[1]

10. From the time Associates began to lease apartments in the Premises, it struggled to maintain a delicate balance between its obligations to HPD to reserve a

---

[1] The amount sought by plaintiff in the complaint suggests it has erroneously sought monies in connection with a a third mortgage on the Premises, which has never been called into default, was not accelerated and, upon information and belief, plaintiff does not actually seek to foreclose it.

portion of the apartments for low-income tenants, while attracting market rate tenants to generate enough income so that it could meet its expenses.

11. However, for several years before plaintiff commenced this action, a number of the apartments that had been reserved for low-income tenants were un-tenanted for long periods of time. Moreover, the Premises had lost many market rate and moderate income tenants, which had an obvious deleterious impact on income. The reason for these unfortunate events was the advent of pervasive drug dealing and related criminal activity apparently being conducted by certain of the tenants and their friends and families. These tenants had been using and dealing crack cocaine and other narcotics and had displayed other serious antisocial behavior leading to vandalism of portions of the Premises and causing other tenants to fear for their safety. People engaged in drug activity had also become semi-permanent fixtures in the public halls and in the area in front of the Premises, thereby detracting from the appeal of the Premises.

12. Once this problem emerged, I began working closely with the New York City Police Department in an effort to rid the Premises of drugs and the offending tenants. In fact, several arrests were made inside certain of the tenants' apartments as a direct result of Associates' cooperation with the police. Associates also did its part by evicting some of the tenants, sometimes to find them returning to live with relatives or friends in their apartments. Although HPD has available within the agency staff to work with police to rid buildings under its jurisdiction from drug activity, HPD was largely non-responsive to my entreaties for its help.

13. The Court should be aware that, in an effort to settle and resolve this matter amicably, Associates turned over in August, 2003 all control over management

5

and leasing of apartments in the Premises to ABC Management Corp. ("ABC"). ABC is a real estate management and brokerage concern that was specifically approved by plaintiff and HPD to address the vacancy issues that had been of concern to HPD. Inexplicably, ABC emerged as the management firm from nowhere, apparently after CPC began dealing with a limited partner of Associates, Jerome Reznick ("Reznick"), and his counsel, who had no authority under Associates' partnership agreement or the Corporation's by-laws to negotiate anything, but who plaintiff insisted must be an "equal" signatory to the management agreement with me.

14. Interestingly, plaintiff recently advised me that ABC too has had difficulty renting apartments in the Premises, despite the fact that ABC was highly touted by Reznick and his then-counsel, Ed Levy, as one of the management companies with the most experience in this area. If anything, this supports the allegations that have always been made by Associates that (i) HPD's stated concerns about vacancy rates notwithstanding, HPD has essentially "abandoned" the building and, for reasons best known to it, has kept it out of the various programs HPD designed to aid drug-infested buildings and that (ii) Associates has not purposefully failed to rent units in the building.

Procedural Posture

15. This action was commenced by the filing of a summons and complaint seeking to foreclose upon the Premises, predicated on the claim that a non-monetary default exists by virtue of Associate's inability to convert the Construction Loan to permanent financing. An order ("Receiver Order") appointing a receiver was obtained by plaintiff ex parte. A copy of the summons and complaint dated May 17, 2002 are annexed collectively to the accompanying Documentary Supplement as Exhibit "A".

6

16. By Order to Show Cause dated December 9, 2002, brought less than one (1) month after I was alerted to the fact that this action had been commenced, Associates moved for relief in the form of an order pursuant to CPLR 5015(a)(1) and (4), relieving it of any purported default in answering and to vacate the Receiver Order. The Order to Show Cause was based on the ground that Associates was never served with process and that the Court therefore lacked jurisdiction over Associates. It alleged all of the facts that demonstrated the merits of Associates' defense to this action. A copy of the Order to Show Cause (without exhibits), which is incorporated by reference, is annexed to the Documentary Supplement as Exhibit "B".

<u>Settlement Discussions</u>

17. Rather than respond substantively to the Order to Show Cause, in February, 2003, plaintiff invited me along with my counsel to meet with its staff and representatives from HPD in an effort to settle this matter and sort out the problems underlying Associates' inability to convert the construction loan to permanent financing.

18. Meetings were held over the course of the next few months in the offices of HPD and counsel for plaintiff negotiated with my counsel in an effort to resolve disputed issues. During the course of these discussions, Associates agreed by stipulation to extend the time within which plaintiff could respond to the Order to Show Cause and finally agreed to ask the Court to "mark off" the Order to Show Cause from the calendar, so that the parties could work toward a resolution without prejudicing Associates' rights to assert the jurisdictional claims made in the Order to Show Cause.[2]

---

[2] The claim in the McWalters Affirmation, ¶10, that the Order to Show Cause was marked off the calendar for failure of defense counsel to appear is simply erroneous. Moreover, her statement that plaintiff's "prior application" [for the relief plaintiff currently seeks] was made but withdrawn . . . due to the filing of an order to show cause by defendant. . . ", is also wrong. Associates never filed an order to

(A copy of a Motion Detail Report, showing the history of adjournments and the status of the case as of that time is annexed to the Documentary Supplement as Exhibit "C").

19. In addition to turning over all responsibility for management and leasing of the Premises to ABC, plaintiff and HPD had made Associates' compliance with a number of additional conditions a prerequisite to HPD's agreement to a conversion of the construction loan to permanent financing. The conditions were:

- HPD must be provided with a current rent roll;
- HPD must be provided with a copy of the current insurance binder;
- HPD must be provided with proof that the apartments in the Premises were registered with DHCR;
- HPD must be provided with an updated title report;
- Associates must turn over management and leasing tasks in connection with the Premises to a managing agent approved by HPD and plaintiff;
- The Premises must be fully tenanted;
- Associates must provide certified copies of income and expense statements for the years 2000 and 2001, and uncertified statements for 2002 (collectively, "Statements").

20. Associates has complied with each and every one of the conditions imposed by HPD, except insofar as the fulfillment of the conditions was frustrated by persons or circumstances beyond Associates' control. Associates has provided HPD with a rent roll, insurance binder, proof of DHCR registration and a title report.

21. The only condition of settlement not yet fulfilled by Associates is to provide HPD with copies of certified income and expense Statements. The fulfillment of that condition has been delayed and is being frustrated and hindered, not by any act or omission that can be attributed to Associates, but by the wrongheaded acts of Reznick.

---

show cause in response to that "prior application". Rather, Associates filed a cross-motion, which was voluntarily withdrawn.

Reznick has, without notice to or consultation with me, unilaterally fired Third Party

Defendant, Cornick Garber & Sandler LLP ("CG&S"), the former accountants for

Associates, who had been charged with the responsibility of overseeing Associates'

financial affairs, and preparing schedules, financial statements and tax returns.

Apparently at Resnick's direction, CG&S has steadfastly refused to turn over pertinent

and material information required to be reviewed before the Statements may be drafted,

and has otherwise withheld proprietary information of Associates, despite numerous

demands and the service of a Third Party Complaint. If anything, it is Resnick's wrongful

discharge of CG&S that has interfered with Associates' ability to fulfill the last condition

imposed by HPD, which is the predicate to resolving this matter and the entire dispute

with plaintiff and HPD.

22. In October of 2003, Reznick sought, ostensibly on behalf of the

Corporation, to intervene in this action ("Intervention Motion"), claiming that my

attorneys, Starr Associates LLP, and I did not adequately represent the Corporation's

interests in the litigation. On March 31, 2004, the Court (Spodek, J.) denied the

Intervention Motion, finding that I adequately represented the interests of Associates and

that Reznick's participation was unwarranted. A copy of the decision and order is

annexed to the Documentary Supplement as Exhibit "D".

23. Associates filed an answer to the complaint and a Third Party

Summons and Complaint (copies of which, together with the Third Party answer, are

annexed collectively to the Documentary Supplement as Exhibit "E"), on November 25,

2003. By Notice of Return, dated December 4, 2003, plaintiff purported to return the

answer as a nullity on the ostensible ground that the time within which to serve the

pleading had expired and that no extension of time for the service had been granted. By the same notice, plaintiff purported to return as a nullity the Third Party Summons and Complaint filed against CG&S, on the ostensible ground that plaintiff's counsel was not authorized to accept service thereof. (A copy of the Notice of Return is annexed hereto as Exhibit "F").

24. On the heels of serving the Notice of Return, and while the Intervention Motion was pending, plaintiff moved by notice of motion dated December 8, 2003 for a judgment of foreclosure and sale, based largely on the claim that Associates was in default.

25. By Notice of Cross-Motion dated January 13, 2004, Associates moved for, among other relief, an order dismissing the complaint on the ground that plaintiff failed to serve Associates with process and that, accordingly, the Court lacked jurisdiction over it and to compel plaintiff to accept the answer served by Associates.

26. In anticipation of a decision in the Intervention Motion and after receipt of Associates' cross-motion, on February 11, 2004, both plaintiff's motion for a judgment of foreclosure and sale and Associates' cross-motion to dismiss the complaint were withdrawn, without prejudice. A copy of the stipulation withdrawing the motions is annexed to the Documentary Supplement as Exhibit "G".

27. One year later, on February 10, 2005, plaintiff served a new motion for a judgment of foreclosure and sale based on the claim that Associates defaulted in answering the complaint. This time, however, the default alleged was based on the ostensible failure of Associates to answer the summons and complaint in this action which is alleged to have been "re-served" on Associates on October 27, 2004. Mc

10

Walters Affidavit, ¶5. Plaintiff contends that the purported "re-service" was accomplished and jurisdiction obtained over Associates by serving the Corporation by delivering a copy of process to a concierge purportedly working in the apartment building in which I reside. The alleged service comes more than three (3) years after the original filing of the summons and complaint. A copy of the affidavit of service is annexed to the Documentary Supplement as Exhibit "H".

28. By order to show cause dated April 27, 2005, Reznick once again sought to intervene in this action by removing Starr Associates LLP as counsel for Associates. That motion is pending before the Court.

## ASSOCIATES' CROSS-MOTION SHOULD BE GRANTED AND PLAINTIFF'S MOTION DENIED

**The Court Lacks Jurisdiction Over Associates
Because of Improper Service of Process**

29. In the most recent incarnation of plaintiff's motion for a judgment of foreclosure and sale, plaintiff has taken the position that Associates has defaulted in answering the complaint. Conceding that plaintiff's initial service of process on Associates was faulty, plaintiff alleges that the summons and complaint were re-served on October 27, 2004 and that Associates failed thereafter to timely answer, move or otherwise respond to the complaint. McWalters Affirmation, ¶5. Because plaintiff has broken nearly every rule of law and procedure in connection with this "re-service", the complaint must be dismissed.

Plaintiff's Failure to Seek a Formal Extension
of Time to Serve Process is Fatal to the Action

      30. CPLR 306(b) requires that a summons and complaint be served on a defendant within 120 days after the filing of the action. The statute further requires that a formal motion be made for an extension of the 120 day period, but only if good cause is shown and it is demonstrated that it would be in the interests of justice to grant the extension.

      31. Here, not only did plaintiff fail to move or cross-move for an extension of time during all of the years that this action has been pending, and in the face of all of the motion practice before the Court, it has failed to seek such relief in its current application, which is limited solely to the application for a judgment of foreclosure and sale. See plaintiff's Notice of Motion dated February 10, 2005. Counsel advises me that on this ground alone, the complaint must be dismissed. McKinney's Practice Commentaries, CPLR 306-b:3, Extension of Time to Serve Process. (plaintiff must either "move for an extension" or . . . cross-move for such relief in opposition to the defendant's motion to dismiss"). Plaintiff has done neither.

      32. Instead, plaintiff has seen fit, in a throw-away line buried in its motion papers, to rely on the simple statement that ". . . .request is made pursuant to CPLR §306-b, upon both good cause and the interest of justice, although either ground is a basis to extend the time, that the time to complete service in the case be extended nun pro tunc to October 27, 2004. No party will be prejudiced by this request." McWalters Affirmation, ¶5. Plaintiff has nowhere elaborated on the good cause for the three (3) year delay or shown anywhere why the interests of justice would be served by its request to dispense

12

with proper procedure. Clearly, Associates will be prejudiced by plaintiff's belated request.

33. If anything, the failure to properly serve a second time in the course of the three (3) years this litigation has been pending is reflective of plaintiff's lack of diligence and neglect. Even if the original failure of service, which plaintiff now concedes, could be attributed to inadvertence, this failure simply cannot. Slate v. Schiavone, 2005 N.Y. Lexis 500 (2005) (court of appeals reverses as an abuse of discretion the lower court's grant of an extension in the "interests of justice", finding that lack of diligence, neglect and mistake should not qualify as good cause).

Service of Process was Improperly Made

34. I am advised by counsel that this Court has not acquired jurisdiction over Associates inasmuch as it was never properly served with process. See CPLR 5015(a)(4).

The Affidavit of Service

35. The affidavit of service (Exhibit H to the Documentary Supplement) alleges that service was made on Associates by serving me as the president of the Corporation by delivering the complaint to "Jose Molina", who is alleged to be the concierge at 245 East 19th Street, New York, New York ("Building"). As counsel has advised, several critical and fatal flaws exist on the face of the affidavit of service that demonstrate that service of process was not made in conformity with law.

36. Plaintiff has apparently chosen the substituted service (i.e. "deliver and mail") procedure to serve the Corporation. Critically, however, this type of service of process on a corporation is not permitted. Pursuant to CPLR 311(a)(1) the process server

13

must tender process directly to an "authorized" corporate representative. Delivery to an unauthorized person who later hands the process to an officer, managing agent or some other qualified representative is ineffective. Lakeside Concrete Corp. v. Pine Hollow Building Corp., 104 A.D.2d 551, 479 N.Y.S2d 256 (2d Dept. 1984) (jurisdiction over a corporation cannot be acquired via substituted service). See also Napic v. Fverfa Investments, Inc., 193 A.D.2d 549, 597 N.Y.S2d 707 (1st Dept. 1993) (service upon concierge with mailing insufficient to confer jurisdiction over corporation).

37. CPLR 311, which provides for personal service upon a corporation, authorizes service of process upon any one of a list of several corporate representatives.[3] Plaintiff does not anywhere purport to claim that "Jose Molina" falls within any of the categories of persons authorized to accept service on behalf of the Corporation as the statutes requires.

<u>Service was Otherwise Defective</u>

38. Even if plaintiff attempts to belatedly cure this fatal error and argue that service was properly made on "Jose Molina" as an agent authorized by the Corporation to accept process (although, nowhere can this be discerned from the affidavit of service itself), service could still not be upheld. Not only is "Jose Molina" not an authorized agent of the Corporation, but, as stated unequivocally in the accompanying affidavit of Building managing agent Elizabeth Crane, sworn to May 11, 2005 ("Crane Affidavit"), ¶3, no "Jose Molina" works in the Building as a concierge or in any capacity.

---

[3]    CPLR 311(a)(1) provides that personal service upon a corporation shall be made by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service". CPLR 311(a)(1).

39. Inasmuch as plaintiff cannot dispute that it failed to serve Associates with process as required by law, the Court must grant Associates' cross-motion to dismiss the complaint as against it.

<u>The Complaint Must be Dismissed as Abandoned Pursuant to CPLR 3015(c)</u>

40. Even if the Court could ignore the myriad of compelling reasons why the complaint must be dismissed for want of personal jurisdiction, the Court would be required to dismiss the complaint in any event because plaintiff failed to "take proceedings" to enter judgment within one year after it alleges Associates originally defaulted in answering. Counsel advises me that, pursuant to CPLR 3015(c) the Court, sua sponte or on motion, "shall" dismiss the complaint as abandoned under these circumstances.

41. The initial motion for a judgment of foreclosure and sale, made by plaintiff on December 8, 2003 ignored the fact that Associates has filed an answer on November 26, 2003 and was based largely on the allegation that Associates was in default in answering. The initial motion made by plaintiff came too late, i.e., more than one (1) year after service was alleged to have been complete (July 25, 2002 per the McWalters Affirmation ¶5) and was thereafter withdrawn. Plaintiff's current motion does not purport to seek a default judgment based on the initial service. Accordingly, the time for plaintiff to have sought a default judgment has long since expired and the action must therefore be deemed abandoned and the complaint dismissed.

## PLAINTIFF'S MOTION FOR A JUDGMENT OF
## FORECLOSURE AND SALE MUST BE DENIED

### Numerous Issues of Fact Abound as to the True
### Cause of the Default as Alleged In the Complaint

42. Associates also has bona fide equitable defenses to the foreclosure of the mortgages encumbering the Premises. Counsel advises that mortgage foreclosure, being equitable in nature, may be denied if it appears that the lender has acted inequitably by contributing to the circumstances that lead up to the default. Indeed, my attorneys have informed me that a party cannot insist upon a condition precedent, when its non-performance has been caused by that party. Bass v. Sevits, 78 A.d2d 926, 433 N.Y.S.2d 245 (3d Dept. 1980) (every contract implies that neither party will do anything to prevent performance by the other party); Smith v. Lamb, 59 Misc. 568, 111 N.Y.S. 455 (Sup. Ct. Suffolk Co. 1908) (court has the power to relieve mortgagor from default where default was in some way procured or brought about by some act of the mortgagee); Pizer v. Herzig, 120 A.D.2d 102, 105 N.Y.S.2d 38 (1st Dept. 1907)(foreclosures may be refused where, by the course of dealings between the parties, the mortgagor has been induced by the mortgagee to suffer the default).

43. As has been explained above, Associates had some difficulty in the past in renting apartments and keeping them occupied due to drug-related activity that HPD chose to ignore. While the loan commitment provides that HPD would convert the Construction Loan to permanent financing, HPD has now apparently taken the position that it will not do so primarily because of the very vacancies caused by the drug-related activities previously described.

16

2002/21023 Motion papers with Inwood declaration (W0004388.DOC)

44. The fact is that plaintiff and HPD have placed Associates in an untenable position. While acknowledging the drug-related problems that had been plaguing the Premises that are attributable to the very population HPD has essentially abandoned, HPD has apparently given plaintiff the green light to foreclose, claiming that vacancies in low income apartments are a violation of Associates' obligations to HPD under the Mortgage Agreements.

45. It would be inequitable in the extreme to permit plaintiff and HPD to benefit from these unfortunate circumstances to the severe detriment of Associates, circumstances which may fairly be attributed to HPD's own failure to provide genuine support to the population HPD has been chartered to serve.[4]

46. Compounding the inequities inherent in the relief sought by plaintiff in this case is the fact that Reznick and others who purport to have an interest in Associates, have worked against me and the interests of Associates with the complicity of plaintiff, which has frustrated my efforts to resolve this action.

47. Over the past several years, Reznick and others have plotted to undermine my authority and deprive me of my rightful participation in the fruits of Associates' success. Although content to sit on the sidelines for nearly twenty (20) years while I ran the Premises and administered the project, Reznick and his cohorts now contend that they have the authority to control the project, negotiate with HPD and CPC and oust me from my position.

48. Despite the court order that decided the Intervention Motion against Reznick's attempt to insinuate himself into these proceedings, CPC and HPD

---

[4] It is astounding that HPD continues to press the point that it will not convert the Construction Loan as a result of vacancies when ABC, the very management company plaintiff and HPD approved, is having its own difficulties renting apartments at the Premises.

17

representatives have continued to communicate directly with Reznick and his various attorneys. Plaintiff and HPD wrongfully encouraged Reznick and his cohorts and, over my objection, even insisted that Reznick sign the ABC management agreement as an equal with me, the only authorized signatory.

49. Reznick has apparently also been egged-on by statements made by plaintiff's representatives that they would rather "deal" with Reznick than with me, irrespective of the fact the Court has confirmed that Reznick has no legal authority to act for Associates. And now, Resnick has made another motion, by which he hopes to wrest control of the litigation from me.

50. To appreciate, not only Reznick's wrongful interference in this litigation, but also plaintiff's outrageous facilitation of the interference, this Court need only review the billing records, which plaintiff has annexed as Exhibit A to the McWalters Affirmation, nearly seventy (70) separate time entries during which counsel for plaintiff communicated with various attorneys for Reznick.

Plaintiff's Motion is Otherwise Deficient

51. The Court is not likely to see a motion less deserving of consideration than that made by plaintiff for a Judgment of Foreclosure and Sale. It should be denied summarily.

52. First, the motion does not comply with the requirements of CPLR 3212(b), which requires all such applications to be accompanied by (i) an affidavit made by a person with knowledge of the facts (ii) a statement of the material facts and (iii) a copy of the pleadings. The motion is devoid of all of these. Nor has plaintiff annexed copies of the note or mortgage to its moving papers as, I am advised, it is required to do

18

so that the Court can search the record. <u>Zoref v. Glassman</u>, 2003 N.Y. Slip Op. 50596, 2003 N.Y. Misc. Lexis 135. Sup. Ct. (Nassau Co. 2003) (plaintiff's motion for judgment of foreclosure and sale summarily denied for failure to annex mortgage, note or pleadings).

53. My attorney has advised me that plaintiff's application is wholly deficient in every respect. In apparently pre-generated boilerplate barely worthy of a foreclosure factory, plaintiff has burdened this Court with a motion chock-full of errors and misleading omissions made, not by a representative of plaintiff who would have knowledge of the underlying facts that predicated the commencement of the action, but rather by an attorney who obviously has no knowledge of what transpired before or after this litigation was commenced.

54. In the seven (7) paragraphs that purport to justify the relief sought by plaintiff, nowhere has counsel described any of the notes and mortgages, the terms thereof or provided any evidence to support an alleged default. Further, counsel has failed to attach the pleadings or even to refer to the pleadings in any manner. Instead, counsel simply adopts as her own the allegations made in an affirmation of regularity submitted more than 2 ½ years prior by an associate in her firm, but which counsel also fails to attach as an exhibit to plaintiff's application. Thus, this Court is asked to make a determination as to whether material issues of fact exist that would warrant a trial based solely on a bare-bones affirmation made by an attorney with no knowledge of the underlying facts, who relies on and adopts the allegations of another attorney whose affirmation is similarly deficient and fails to submit that affirmation, depriving the Court of the tools with which to search the record to determine if judgment is appropriate.

55. With regard to the McWalters Affirmation, it is clear that it was simply cobbled together from other standard boilerplate non-payment foreclosure litigation documents used in cases handled by counsel's office, since many of the claims asserted therein simply have nothing to do with this case and given the myriad mistakes and typographical errors it contains, it is hard to believe counsel ever deigned to review it before it was filed. 5 Counsel also makes numerous misstatements of purported fact that can only be intended to mislead the Court.

56. Given the myriad errors committed in the most fundamental aspects of this foreclosure litigation, there is absolutely no justification whatsoever for the award of counsel fees to plaintiff of $45,000.00, McWalters Affirmation, ¶12, or any amount. The motion is replete with inapposite references to customary tasks foreclosure counsel may perform in typical non-payment cases, but which have no real bearing to the facts of this case. Clearly, fees purportedly generated in connection with "payoffs and reinstatement" and "junior encumbrances", McWalters Affirmation, ¶18, are not germane to this matter.[6]

57. The Court should also be advised that when plaintiff first moved for a judgment of foreclosure and sale back on December 8, 2003, it requested the sum of $11,500.00 in legal fees, purportedly expended up to that date. Bergman Affidavit, ¶¶11 and 22. Curiously, the billing records (Exhibit A to McWalters Affirmation) demonstrate that since December 8, 2003, legal fees incurred by plaintiff actually amounted to no

---

[5] Incredibly, counsel has left in the "cut and paste" affirmation submitted to this Court extraneous statements from plaintiff's previous motion, which was supported by the affidavit of Bruce Bergman ("Bergman Affidavit"). For example, Ms. McWalters states that," . . . your affiant notes for the court that he is not an employee of plaintiff" (emphasis supplied). McWalters Affidavit, ¶20, page 6. Like all of the other allegations affirmed by McWalters, nearly all of which were copied from the Bergman Affidavit verbatim, it typifies the lack of care and diligence with which plaintiff has treated this case from the inception.

[6] Further, in addition to the fact that plaintiff failed to serve Associates with process as required by law, it also neglected to name and serve HPD as a party defendant, necessitating the expenditure of unnecessary fees to remedy. See McWalters Affirmation, ¶9.

more than $5,000, making the request for $45,000.00 a mystery. Like everything else plaintiff has done in furtherance of this prosecution, the legal fees application is tainted with error.

CONCLUSION

58. As this affidavit demonstrates, this case should be dismissed as against Associates. At a minimum, judgment of foreclosure and sale is wholly inappropriate and plaintiff's motion itself is deficient as a matter of law.

_____
JONATHAN POOLE

Sworn to before me this
13th day of May, 2005

_____
Notary Public

**ANDREA ROSCHELLE**
**Notary Public, State of New York**
**No. 02RO6025801**
**Qualified in Westchester County**
**Commission Expires 08/01/2006**

## ATTORNEY CERTIFICATION

To the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation and filing of the papers herein are not "frivolous", as defined in subsection (c) of section 130-1.1 of NYCRR.

Andrea L. Roschelle, Esq.

Dated: New York, New York
       May 13, 2005

PD0915

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

THE COMMUNITY PRESERVATION CORPORATION,

                  Plaintiff,

           - against -

1974 REALTY ASSOCIATES,

                 Defendant.

Index No. 21023/02

**AFFIDAVIT OF SERVICE**

---

1974 REALTY ASSOCIATES,

             Third Party Plaintiff,

           - against -

CORNICK GARBER & SANDLER LLP,

            Third Party Defendant.

STATE OF NEW YORK    )
                    ) SS.:
COUNTY OF NEW YORK  )

        PAMELA D. DRAKE, being duly sworn, deposes and says:

        I am not a party to the within action, am over 18 years of age and reside in the State of New York.

        On May 13, 2005, I served the within **NOTICE OF CROSS-MOTION AND SUPPORTING AFFIDAVITS** upon the persons listed at the fax numbers set forth below by sending a copy thereof to their offices via facsimile:

        Susan McWalters, Esq.
        CERTILMAN BALIN ADLER & HYMAN, LLP
        (516) 296-7111

        Dan Goldwasser, Esq.
        VEDDER, PRICE, KAUFMAN & KAMMHOLZ
        (212) 407-7799

PD1207

On May 16, 2005, I served the within **NOTICE OF CROSS-MOTION AND**

**SUPPORTING AFFIDAVITS** upon the persons listed at the addresses set forth below by sending

a copy thereof to their offices via messenger using Elite Couriers, New York, New York:

> Susan McWalters, Esq.
> CERTILMAN BALIN ADLER & HYMAN, LLP
> Attorneys for Plaintiff
> 90 Merrick Avenue
> East Meadow, New York 11554
>
> Dan Goldwasser, Esq.
> VEDDER, PRICE, KAUFMAN & KAMMHOLZ
> Attorneys for Third-Party Defendant Cornick Garber & Sandler, LLP
> 805 Third Avenue
> New York, New York 10022

_____
PAMELA D. DRAKE

Sworn to before me this
17th day of May, 2005.

_____
Notary Public

ANDREA ROSCHELLE
Notary Public, State of New York
No. 02RO6025801
Qualified in Westchester County
Commission Expires 06/01/2006

PD1207

SUPREME COURT
STATE OF NEW YORK, COUNTY OF    KINGS       Index No. 21023     Year   02

THE COMMUNITY PRESERVATION CORPORATION,

                     Plaintiff,

            - against -

1974 REALTY ASSOCIATES,

                     Defendant.

----------------------------------------------------------------

1974 REALTY ASSOCIATES,

                     Third Party Plaintiff,

           -against-

CORNICK GARBER & SANDLER,

                     Third Party Defendant.

## NOTICE OF CROSS-MOTION

**STARR ASSOCIATES LLP**

*Attorney(s) for* Defendant/Third Party Plaintiff

*Office and Post Office Address, Telephone*

245 FIFTH AVENUE
SUITE 1102
NEW YORK, N.Y. 10016
TELEPHONE (212) 620-2680

To

          Signature (Rule 130-1.1-a)

          Print name beneath

          Service of a copy of the within is hereby admitted.

Attorney(s) for          Dated: _____

**PLEASE TAKE NOTICE:**

☐ **NOTICE OF ENTRY**

that the within is a *(certified) true copy of a*
duly entered in the office of the clerk of the within named court on

☐ **NOTICE OF SETTLEMENT**

that an order                    of which the within is a true copy
will be presented for settlement to the HON.      one of the judges of the
within named Court, at
on              at          M.

Dated,

                   Yours, etc.

                   **STARR ASSOCIATES LLP**

MAY 19 2005

**D & V**                    **D & V**

**D & V**    COPY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------x
THE COMMUNITY PRESERVATION CORPORATION,

                                Plaintiff(s),

-against-

1974 REALTY ASSOCIATES,

                                Defendant(s).
-------------------------------------------------------------------x

Index No. 21023/02

**NOTICE OF MOTION**

JUSTICE ASSIGNED:
HON. JOSEPH J.
    DOWD

**Proposed Order attached.**

S I R S :

        PLEASE TAKE NOTICE, that upon the annexed affirmation of SUSAN L. MCWALTERS dated the 10th day of February, 2005 and upon all of the papers and proceedings heretofore had and heretofore filed herein, the undersigned will move this Court at The Foreclosure Motion Part, Room 274 thereof before the justice assigned, at the Supreme Court of the State of New York, to be held in and for the County of Kings at the Courthouse thereof, located at 360 Adams Street, Brooklyn, New York on the 2nd day of March, 2005 at 2:00 o'clock in the afternoon of that day or as soon thereafter as counsel can be heard for a Judgment of Foreclosure and Sale, in the form annexed hereto and to validate service upon 1974 Realty Associates *nunc pro tunc*, and for such other and further relief as to the Court may seem just and proper.

Dated:  East Meadow, New York
        February 10, 2005

ORIGINAL

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE COMMUNITY PRESERVATION CORPORATION,

                   Plaintiff,

        - against -

1974 REALTY ASSOCIATES,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Index No. 21023/02

**AFFIDAVIT OF SERVICE**

1974 REALTY ASSOCIATES,

           Third Party Plaintiff,

        - against -

CORNICK GARBER & SANDLER LLP,

          Third Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STATE OF NEW YORK    )
                      ) SS.:
COUNTY OF NEW YORK  )

       PAMELA D. DRAKE, being duly sworn, deposes and says:

       I am not a party to the within action, am over 18 years of age and reside in the State of New York.

       On May 13, 2005, I served the **NOTICE OF PETITION AND VERIFIED PETITION** in this matter upon the persons listed at the addresses set forth below by sending a copy thereof to that office via messenger from Elite Couriers, New York, New York:

                  Susan McWalters, Esq.
                  CERTILMAN BALIN ADLER & HYMAN, LLP
                  Attorneys for Plaintiff
                  90 Merrick Avenue
                  East Meadow, New York 11554

JUN-15-2005 12:43 From:                    12125881674          To:2129831050          P:141

Jun 03 05 12:52p                                                                    P.2

At an I.A.S. Trial Term, Part 62 of the Supreme
Court of the State of New York, held in and for the
County of Kings, at the Courthouse, located at
Civic Center, Borough of Brooklyn, City and State
of New York, on the 3 day of June 2005

P R E S E N T :

Hon. Francois Rivera

                    Justice

Community Preservation
Corporation                          Plaintiff(s)        Cal. No. 8, 7, 10, 11

                                                         Index No. 21023-02

        - against -

1974 Realty Associates

                                     Defendant(s)

| The following papers numbered 1 to    read on this motion | Papers Numbered |
|---|---|
| Notice of Motion - Order to Show Cause and Affidavits (Affirmations) Annexed | |
| Answering Affidavit (Affirmation) | |
| Reply Affidavit (Affirmation) | |
| Affidavit (Affirmation) | |
| Pleadings - Exhibits | |
| Stipulations - Minutes | |
| Filed Papers | |

Motion (#9) by plaintiff for a judgment of foreclosure
and sale and defendants' cross-motion (#11) to
dismiss the complaint are adjourned to June 17, 2005
for oral argument. Substituted counsel (Emig + Bush)
adopts the submission made by defendant's former
counsel (Starr Associates LLP)

The application brought by Emig + Bush (#8) pursuant to CPLR
321 to substitute as counsel for defendant and to remove Starr
Associates as counsel for defendant is granted. The cross-motion

For Clerks use only (#10) by Starr Associates for a stay of the
MG ☑          Emig + Bush motion for relief pursuant to CPLR
MD ___        321 is denied in its entirety. Starr Associates
Motion Seq. # 331    shall deliver all papers ENTER and correspondence
x 7 10 11     to Emig and Bush by _____ noon on June 8, 2005
                                              J.S.C.

EJV-rev 11-04

Stan Associates                              FRANCOIS A. RIVERA

                    David S. H